CARL C. STOERGER *et al.*, Plaintiffs-Appellants, *v.* IVESDALE CO-OP GRAIN Co., Defendant-Appellee.

(No. 12078;

Fourth District—November 21, 1973.

Summers, Watson & Kimpel, of Champaign, for appellant.

Lawrence Eaton, of Monticello, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is brought by the plaintiffs from a judgment in favor of the defendant on plaintiffs' complaint for recovery of the face amount of certain debentures and granting defendant's counterclaim for reformation of those debentures.

The plaintiff, Carl C. Stoerger, purchased six debentures in the total amount of $39,000 from the defendant on May 1, 1966, one for himself and five for the other plaintiffs, his brothers and sisters for whom he acted in all dealing with the defendant.

The debentures stated that they were to pay six per cent interest payable on May 1st of each year, but the maturity date stated simply that they were payable on the first day of May, with only the word "May" being typed in the printed form without any year being specified. The debentures stated that they were issued May 1, 1966.

The defendant requested payment several times beginning in late 1969 contending that he had purchased the debentures with the understanding that they would be redeemed upon request. Finally, the plaintiff filed the complaint underlying this appeal on July 14, 1971 seeking a judgment for $39,000 alleging that the instruments were payable upon demand, that plaintiff had made a demand and defendant refused payment.

The defendant's answer admitted all the allegations except that the instruments were payable on demand and that they were due. Defendant also filed a counterclaim for reformation of the debentures to correct a mutual mistake of the parties and the scrivener who prepared the

debentures, by inserting the year 1976 in the due date as was agreed and intended by the parties.

The debentures were admitted into evidence by agreement of the parties, and it was stipulated that all interest had been paid each year to May 1, 1972 and that a written demand for payment of all the debentures had been made on January 29, 1971.

The minutes of a meeting of the board of directors of the defendant co-op on March 24, 1966 state that the issuance of debentures in multiples of $500 maturing May 1, 1976 was authorized for financing elevator construction. The defendant's president and secretary-treasurer testified that the debentures were intended to be for ten years and that the debentures and the expansion project which they were to finance had been discussed with the member-farmers who were expected to buy the debentures. The two officers testified that in the spring of 1966 they signed a number of the debentures without completing them, directing the manager of the co-op to complete them as the farmers purchased them and to fill out the maturity date as 1976. The manager testified that he knew all of the debentures were to be due in May 1976 but that he inadvertently omitted that year on some of the debentures merely typing in the word "May". The manager further testified that when the issuance of these debentures was being discussed, the plaintiff knew and understood that they were to be for ten years because he had indicated that he wished to leave his money invested for the full ten years even if an opportunity to retire them earlier was offered.

The president, secretary-treasurer, and manager of the defendant co-op all testified that the plaintiff had long been an active stockholder of the defendant co-op and that he had owned some of the ten-year debentures previously issued in 1957. They also testified that in conversations with them the plaintiff indicated an understanding of the ten-year period, that he attended all meetings of the board of directors and that each year he received an annual statement showing the debentures as maturing May 1, 1976.

Defendant's manager testified that a few of the debentures of this series issued in 1966 were dated to mature in 1976. The board of directors and the manager first learned that the year of maturity was omitted on some of the debentures when it was brought to their attention in late 1969 by plaintiff. They testified that in 1970 plaintiff inquired why the year had been omitted. The defendant's president testified that approximately one year after the debentures were sold the plaintiff told him that he thought he could get his money out at any time although he understood the debentures were for ten years.

The plaintiff testified that he had previously purchased ten-year deben-

tures in 1956, some of which were exchanged for these debentures on May 1, 1966. Plaintiff said that he did not agree to leave his money in ten years but understood they were from year to year "because [they] said they could get the money from the St. Louis bank any time that any of the farmers wanted their money out." Plaintiff further elaborated by saying that he understood the money could be left in for ten years but that it could be withdrawn sooner and that nothing was said about the maturity date by the manager at the time he actually bought the instruments. The plaintiff testified as to being familiar with the purpose of the debentures and the operation of the defendant co-op and acknowledged going to all of the shareholders' meetings from 1966 to the present and seeing the annual reports which were distributed. The plaintiff had been a shareholder for approximately twenty years, continually interested in the co-op's business and management. He discussed the improvements financed by the 1966 debentures indicating approval but disapproved of later acquisitions of buildings and projects entailing sizeable indebtedness. He testified that he was advised by his attorney to either become a director or get his investment out and that after being defeated in his bid for election as a director, he brought it to the board of director's attention that the debentures had no certain due date and demanded payment.

■■■ Plaintiff refers to Article 3 of the Uniform Commercial Code on *Commercial Paper* where in § 3—108 it is provided that instruments in which no time for payment is stated are payable on demand. (Ill Rev. Stat. 1971, ch. 26, par. 3—108.) However, Article 3 does not apply to investment securities (Ill. Rev. Stat., ch. 26, par. 3—103) and clearly these debentures are not commercial paper but rather are investment securities coming under Article 8 of the Uniform Commercial Code. (Ill. Rev. Stat. 1971, ch. 26, par. 8—102.) Article 8 of the Uniform Commercial Code has no provision making undated instruments demand paper, but there is a provision for incomplete securities providing that they may be completed as authorized so long as the signatures necessary for their issue or transfer are present. Ill. Rev. Stat. 1971, ch. 26, par. 8—206(1) (a).

■■ A court may reform an instrument so as to make it conform to the intention of the parties and the agreement between them. (*Lux v. Lelija*, 14 Ill.2d 540, 152 N.E.2d 853.) In order for reformation to be granted the proof must clearly and convincingly show that a mistake of fact and not law, mutual and common to both parties, was made. (*Skelly v. Ersch*, 305 Ill. 126, 137 N.E. 106.) Supplying provisions which were admitted through accident or mistake is a legitimate means of reformation. *Krabbenhoft v. Gossau*, 337 Ill. 396, 169 N.E. 258.

■■ The plaintiff contends that defendant should be estopped from acquiring reformation due to their gross negligence in making the instrument, pointing out that the defendant's officers testified that they were negligent in signing the debentures in blank and that the manager said failing to insert the date was a mistake on his part. Plaintiff argues that these unilateral errors were compounded by a failure to discover the mistake after issuance of the instruments or to attempt to correct it after they were aware of it. However, estoppel does not arise where the acts of the parties sought to be estopped were due to ignorance by reason of an innocent mistake, and in order to bar reformation the negligence must be so gross as to amount to a violation of a positive legal duty. (*Skelly v. Ersch.*) The reasoning for this reluctance to allow estoppel against one seeking reformation is that nearly every mistake necessarily implies some degree of negligence. *Blumenfeld v. Neuman,* 350 Ill.App. 306, 112 N.E.2d 742.

■■ Parol evidence is admissible to show the real agreement between parties when a mistake has been made in a written contract and the evidence is for the purpose of making the contract conform to the original intent of the parties. *Brosam v. Employer's Mutual Casualty Co.* 61 Ill.App.2d 183, 209 N.E.2d 350.

The trial court found that the evidence in the instant case clearly and convincingly established that the parties intended these debentures to have a due date of May 1, 1976. The evidence shows a continuous close relationship of the plaintiff with the defendant co-op, including the purchase by the plaintiff of an earlier series of ten-year debentures and familiarity with the plans to issue and purpose behind the instruments involved here. The minutes of the defendant's board of directors indicates the authorization of ten-year debentures. The officers and manager testified to that term being intended by all parties, and the annual statements admittedly received and read by the plaintiff carried these obligations as a long term liability coming due May 1, 1976.

■■ The debentures on their face indicate an ambiguity by the absence of a year following the word May, in that the second paragraph provides that "The Company shall have and it reserves the right to pay any or all Debentures outstanding on May 1 of any year, with interest to date of payment, without penalty of premium for payment in advance. Notice of intent to deem [*sic* redeem] shall be given at least thirty days prior to redemption and all holders shall be treated on an equal pro rata basis." The language concerning redemption on May 1 of any year without penalty for payment in advance clearly implies that the debentures had a definite due date and the provision that in case of redemption all holders should be treated on an equal pro rata basis negates plaintiffs'

contention that holders of the debentures could demand payment in full at any time. Therefore, the trial court judgment denying plaintiffs complaint for the full amount of the debentures and granting defendant's counterclaim for reformation was proper and is affirmed.

Affirmed.

CRAVEN, P. J., and TRAPP, J., concur.