**In re Owen C. GLASS et ux., Bankrupts.**

**Charles Darwin DAVIDSON, Trustee, Plaintiff,**

**v.**

**ARKANSAS RIVER VALLEY GRAIN DRYING COOPERATIVE and Lonoke Production Credit Association, Defend-ants.**

**No. LR–77–570–571B.**

United States District Court, E.D. Arkansas, W.D.

April 16, 1982.

Charles Davidson, Little Rock, Ark., pro se.

Charles Walls, Lonoke, Ark., Charles L. Schlumberger, Wright, Lindsey & Jennings, Little Rock, for Ark. River Valley Grain Drying Coop.

Arthur Macom, Stuttgart, Ark., for Lo-noke Production Credit Assn.

EISELE, Chief Judge.

ORDER

This is an appeal from a judgment of the Bankruptcy Court holding that a "Delivery Debenture," issued to Owen C. Glass by Arkansas River Valley Grain Drying Coop-erative, is an instrument in which a security interest is perfected by mere possession.

On the basis of the Findings of Fact, Discussion and Conclusions of Law set forth

in the Bankruptcy Court's well-reasoned opinion, *Davidson v. Arkansas River Valley Grain Drying Cooperative*, No. LR–77–570–571B (April 21, 1980), it is Ordered that the Judgment be, and it is hereby, affirmed.

## FINDINGS OF FACT

1. On April 1, 1976 Lonoke Production Credit Association (hereinafter "PCA") loaned $30,000 to Owen C. Glass (hereinafter "Glass"). Glass signed a demand promissory note evidencing this indebtedness.

2. The money was loaned to Glass so that he could invest in a grain drying and storage facility operated by Arkansas River Valley Grain Drying Cooperative (hereinafter "ARV").

3. In return for Glass' investment, ARV issued to him a certificate called a Delivery Debenture, identified as Note No. 10677.

4. The Delivery Debenture evidenced two obligations by ARV to Glass. The first obligation, labeled as Part I of the Delivery Debenture and entitled "Registered Note," was a promissory note under which ARV promised to pay, 15 years after date, $30,-000 to Glass, plus interest at the rate of 6% per annum, which was payable annually. The second obligation, labeled Part II of the Delivery Debenture and entitled "Delivery Privilege Contract," afforded to Glass the right to dry and store a certain amount of rice and soybeans in the ARV facility.

5. The Delivery Debenture was retained by the PCA as security for its loan to Glass. It was stipulated by the parties that the PCA had possession of the Delivery Debenture except when delivered to ARV for the purpose of reissuance, so that if the Court determines that a security interest in the Delivery Debenture is perfected by possession, there is no dispute as to the PCA's possession.

6. On October 20, 1976 two portions of the Delivery Debenture amounting to $3,500 each were transferred to Tom Ed Livesay and Robert E. Norman. Accordingly, a new Delivery Debenture was issued to Glass, identified as Note No. 11518, evidencing an indebtedness of $22,500.00. This Delivery Debenture also was in the possession of the PCA.

7. Glass failed to repay his $22,500.00 indebtedness to the PCA, and the Delivery Debenture was transferred into the name of PCA, thereby satisfying Glass' indebtedness. This transfer was effectuated on August 31, 1978.

## DISCUSSION

This Adversary Proceeding arises out of a dispute between Charles D. Davidson, the Trustee in this bankruptcy proceeding, and Lonoke Production Credit Association, a creditor of Owen C. Glass, the bankrupt herein. Under a demand promissory note executed by Glass on April 1, 1976, the PCA loaned $30,000 to Glass so that he could become a member of and invest in the Arkansas River Valley Grain Drying Cooperative. The purpose of the investment was to enable ARV to acquire and maintain a grain drying facility near Morrilton. In return for this investment, ARV issued a Delivery Debenture to Glass. The Delivery Debenture evidenced two obligations on the part of ARV. Part I, the Registered Note, obligated ARV to repay the investment in 15 years, with interest accruing at 6% per annum, payable annually. Part II, the Delivery Privilege Contract, entitled Glass to use a certain amount of the drying and storage space in the facility.

When the Delivery Debenture was issued, the PCA took possession of it as security for Glass' $30,000 indebtedness, as agreed between the PCA and Glass. Subsequently, on October 20, 1976 part of the Delivery Debenture was transferred to two individuals, and the proceeds of that transfer were applied against Glass' indebtedness, reducing it to $22,500.00. A new Delivery Debenture was issued reflecting the transaction, and it was returned to PCA's possession.

Thereafter, the PCA demanded payment on its promissory note. Glass defaulted, and on August 30, 1978 the PCA presented the Delivery Debenture to ARV so that a new certificate could be issued in its name,

thereby satisfying Glass' indebtedness to the PCA. The transaction was completed on August 31, 1978.

On September 6, 1979 the Trustee instituted this Adversary Proceeding against ARV to have the Delivery Debenture included in the bankrupt estate. On October 19, 1979 the Trustee amended his complaint to include the PCA as a defendant. Although none of the pleadings state the grounds upon which the Trustee relies to support his action, it is evident that the Trustee claims that the transfer of the Delivery Debenture into the name of the PCA constituted a preferential transfer in violation of Sec. 60 of the Bankruptcy Act of 1898, as amended. The relevant portions of Subsection (a) of that section basically state that a preferential transfer is a transfer made by the bankrupt, while insolvent and within four months of filing, to a creditor so that the creditor receives a greater percentage of his debt than some other creditor of the same class.

Subsection (b) of that section states in relevant part:

... [A] transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee.

The only issues in this dispute center upon this provision. The Trustee argues, first, that no security interest attached because there is no written security agreement. Second, he argues that even if a security interest did attach, the PCA had an unperfected security interest in the Delivery Debenture, and so the transfer was not "so far perfected" until the date that the Delivery Debenture was actually transferred into the name of the PCA. The PCA contends that its security interest did attach and was perfected through its possession of the Delivery Debenture, and thus it was "so far perfected" so as not to run afoul of Sec. 60. The record establishes that if the PCA's security interest was indeed attached and

perfected when it took possession of the Delivery Debenture, there is no violation of Sec. 60. Hence, as agreed at the pre-trial conference, the only issue before this Court is whether the PCA had an attached and perfected security interest. Sec. 60(a)(7) dictates that in determining this issue, the court is required to apply the local law relevant to perfection of security interests. In this instance, the applicable law is Article 9 of the Uniform Commercial Code, codified as Ark.Stat.Ann. Sec. 85-9-101 *et seq.*

## I. *Did a security interest attach?*

The Trustee contends that no security interest attached to the Delivery Debenture, as required under Ark.Stat.Ann. Sec. 85-9-203. If this is true, then the question of perfection is moot. There is no doubt, however, that a security interest did attach. Ark.Stat.Ann. Sec. 85-9-203 (Cum.Supp. 1979) states in relevant part:

(1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) *The collateral is in possession of the secured party pursuant to agreement,* or the debtor has signed a security agreement which contains a description of the collateral; and

(b) Value has been given; and

(c) The debtor has rights in the collateral. (Emphasis added.)

Taking the requirements in inverse order, it is undisputed that Glass had rights in the collateral at the time it was given for his indebtedness. The Delivery Debenture evidenced a promise on the part of ARV to pay him $30,000 and an entitlement to use the facilities. As for the question of value, it was stipulated at trial that the PCA had given consideration to Glass in return for its interest in the Delivery Debenture. Finally, the PCA satisfied the requirements of Subsection (a) by taking possession of the Delivery Debenture, pursuant to agreement. Subsection (a) clearly establishes that possession by the secured party is an alternative to executing a security agreement, and since it is stipulated that the

PCA had possession of the Delivery Debenture, the Trustee's argument has no merit.

II. *Does possession of the Delivery Debenture constitute perfection of the PCA's security interest therein?*

█ The identity of the Delivery Debenture is the crux of this question. The PCA contends that, for the purpose of perfection, the Delivery Debenture is an instrument as defined in Ark.Stat.Ann. Sec. 85–9–105(1)(i) (Cum.Supp.1979), which states:

"Instrument" means a negotiable instrument (defined in Sec. 85–104), or a security (defined in Sec. 85–8–102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is an ordinary course of business transferred by delivery with any necessary endorsement or assignment[.]

Hence, the PCA claims that it perfected its security interest by taking possession of the Delivery Debenture. A security interest in an instrument can be perfected *only* by possession, according to Ark.Stat.Ann. Sec. 85–9–304(1) (Cum.Supp.1979), which states:

*85–9–304. . .*

(1) A security interest in chattel paper or negotiable documents may be perfected by filing. *A security interest in money or instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession[.]* (Emphasis added.)

The Trustee argues that it is not an instrument, but a "general intangible," a catch-all term of identity given to anything which is not included in the more specific items covered by Article 9: goods, accounts, chattel paper, documents, and instruments. *See,* Ark.Stat.Ann. Sec. 85–9–106 (Cum.Supp. 1979). If the Delivery Debenture is a general intangible, then Ark.Stat.Ann. Sec. 85–9–302 dictates that a security interest therein must be perfected by filing. In support of its contention that the Delivery Debenture is an instrument, the PCA offers alternative arguments that it is either a security, or a negotiable instrument, or an instrument as otherwise defined in Sec. 85–9–105(1)(i). The PCA's basis for the latter two arguments is that the Delivery Debenture is actually a severable document, and since Part I, the Registered Note, is basically a promissory note and therefore an instrument, the PCA perfected its security interest therein by possession. Although this contention is supported by evidence and may have merit, the Court sees no need to pass on that question because it is convinced that the Delivery Debenture is a security.

Ark.Stat.Ann. Sec. 85–8–102 defines a security as follows:

*85–8–102. Definitions and index of definitions.*

(1) . . .

(a) A "security" is an instrument which (i) is issued in bearer or registered form; and

(ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in area in which it is issued or dealt in as a medium for investment; and

(iii) is either one of the class or series or by its terms is divisible into a class or series of interests; and

(iv) evidences a share, participation or other interest in property or in an enterprise, or evidences an obligation of the issuer.

. . . . .

(c) A security is in "registered form" when it specifies a person entitled to the security or to the rights it evidences and when its transfer may be registered upon books maintained for that purpose by or on behalf of an issuer or the security so states.

The testimony of Mr. Authur Macom establishes that although the Delivery Debenture is not a traditional stock certificate, it is nonetheless a security within the meaning of the provision stated above. Mr. Macom, an attorney for Riceland Foods, the parent of ARV, stated that ARV originally issued stock certificates to evidence an investor's interest. Subsequently, however,

ARV converted its outstanding stock certificates to what are now termed Delivery Debentures, and all subsequent investments were also evidenced by Delivery Debentures. This was done so that ARV maintained compliance with Sec. 502 of the Internal Revenue Code, which pertains to cooperatives. He also stated, however, that the Delivery Debenture is viewed as a security by Riceland, its cooperatives, and those who deal in them.

A comparison of the Delivery Debenture's features to the "security" definition establishes that the Delivery Debenture is clearly a security. By its terms, the Delivery Debenture is issued in registered form, is one of a series of instruments, and evidences a share, participation, or other interest in an enterprise or evidences an obligation of the issuer. The testimony of Mr. Macom clearly establishes that it is recognized in the area as a medium for investment. The Delivery Debenture not only bears interest, but also provides a transferable privilege that fluctuates in value from year to year. In a good crop year drying and storage facilities are in greater demand, and so part or all of the Delivery Privilege Contract may be transferred for a higher price. Conversely, the Delivery Debenture is less valuable in a bad crop year, when there is less demand for such facilities.

The Delivery Debenture is a unique item, apparently used only in farming. A perusal of case law, however, uncovered one decision that is specifically on point. In *Stoerger v. Ivesdale Co-op Grain Company*, 15 Ill.App.3d 313, 304 N.E.2d 300, 13 UCC Rep. 914 (Ill.App.1973), the Co-op had issued debentures to finance grain elevator construction and acquisitions of buildings. The issue before the court was whether the debentures were payable on demand or at a fixed maturity date. In addressing this issue, the court stated:

> Plaintiff refers to Article 3 of the Uniform Commercial Code on Commercial Paper where in Sec. 3–108 it is provided that instruments in which no time for payment is stated are payable on demand . . . however, Article 3 does not apply to

investment securities . . . *and clearly these debentures are not Commercial Paper but rather are investment securities coming under Article 8 of the Uniform Commercial Code [citing Sec. 8–102]*. 304 N.E.2d at 302, 13 UCC Rep. at 916 (Emphasis added).

█ Hence, because the Delivery Debenture is a security as defined in Sec. 85–8–102, and therefore is an instrument under Sec. 85–9–105(1)(i), a security interest therein can be perfected only by possession, according to Sec. 85–9–304(1). Since the parties stipulated that the PCA had possession of the Delivery Debenture for perfection purposes, the PCA was "so far perfected" well before the crucial four month period, and the transfer to the PCA therefore did not constitute a preferential transfer in violation of Sec. 60 of the Bankruptcy Act.

## CONCLUSIONS OF LAW

1. The PCA's security interest in the Delivery Debenture attached when it took possession, in accordance with Ark.Stat. Ann. Sec. 85–9–203(1).

2. The Delivery Debenture is a security as defined under Ark.Stat.Ann. Sec. 85–8–102, and is therefore an instrument in accordance with Ark.Stat.Ann. Sec. 85–9–105(1)(i).

3. In accordance with the stipulations of the parties, the PCA had a perfected security interest through its possession of the Delivery Debenture.

4. The transfer of the Delivery Debenture by ARV to the PCA did not constitute a preferential transfer in violation of Sec. 60 of the Bankruptcy Act.

## ORDER

It is hereby ORDERED, ADJUDGED, and DECREED that the Lonoke Production Credit Association was perfected in accordance with the terms of Sec. 60 of the Bankruptcy Act; that the transfer by Arkansas River Valley Grain Drying Cooperative to the PCA did not constitute a preferential transfer in violation of Sec. 60 of the Bankruptcy Act; and this Adversary Proceeding is dismissed.