MARENGO FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, v. FIRST NATIONAL BANK OF WOODSTOCK, Trustee, *et al.*, Defendants-Appellants.

Second District   No. 2—87—1145

Opinion filed July 29, 1988.

Donald H. Geiger, of Waukegan, for appellants.

Thomas D. Nuelle, of Kell, Nuelle & Loizzo, of Woodstock, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendants, First National Bank of Woodstock (First National), as trustee, O. Edwin Malenius, and Edwin A. Malenius, appeal from a judgment reforming four promissory notes executed by the Maleniuses and payable to plaintiff, Marengo Federal Savings and Loan Association (Marengo), to show that the notes are secured by second mortgages executed by First National at the Maleniuses' direction. Defendants contend that reformation was improper because there was no evidence that the parties intended, at the time the notes were executed, that the notes be secured by mortgages. Alternatively, defendants argue that plaintiff's negligence in drafting the loan documents bars reformation.

The Maleniuses had been customers of plaintiff for several years, borrowing money for construction of residences and apartment buildings secured by first mortgage liens on the premises constructed. If additional funds were needed the Maleniuses obtained loans from plaintiff in exchange for unsecured promissory notes. Plaintiff alleges that commencing in July 1979 the Maleniuses were informed that future loans had to be secured by second mortgages. The notes and second mortgages involved in this case relate to properties held by First National Bank of Woodstock, as trustee; the Maleniuses were the beneficial owners of the trust and had the power of direction.

In July 1979 the Maleniuses contacted plaintiff to obtain additional funds for improvements to a house they had constructed. The Maleniuses signed a promissory note dated July 6, 1979, a retail installment contract-home improvement, a notice of right of rescission, and a mortgage dated July 7, 1979. Edwin A. Malenius also prepared and executed a directional order to First National, as trustee, to sign the mortgage; the trustee did on July 30, 1979, returned it to plaintiff, and it was thereafter recorded. The mortgage was for the same amount and repayment period as the promissory note and was the only document which indicated that plaintiff had acquired a security interest in the related real property. The Maleniuses obtained three additional loans related to apartment buildings they owned, two in October 1979 and one in November 1979, which were processed in the same manner as the July loan. Plaintiff's letters to the Maleniuses requesting that they have First National execute these mortgages were dated up to five days after the promissory notes were signed, and

Edwin A. Malenius sent letters directing First National to execute these mortgages, which were thereafter delivered to and recorded by plaintiff. The later three mortgages were also for the same amount and repayment period as the related promissory notes, and stated that they were executed to secure the payment of the notes executed by the Maleniuses.

In January 1981, First National, at the direction of Edwin A. Malenius, entered into a contract to sell the property which was allegedly used as security for the July 1979 loan. The installment note for warranty deed expressly acknowledged the second mortgage "dated July 7, 1979," which is the subject of this litigation.

In January 1982, the Maleniuses each filed a voluntary petition for reorganization pursuant to chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101 *et seq.* (1982)) with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, and in a statement of financial affairs to the court filed in February 1982, the Maleniuses reported the loans at issue in this case as secured loans. On September 19, 1985, the Maleniuses entered into an agreed order in the bankruptcy proceedings in which they acknowledged the validity of the loans in question as secured debts and which authorized plaintiff to foreclose the mortgages.

On February 19, 1986, plaintiff commenced an action to foreclose the mortgages at issue, and defendants answered asserting the invalidity of the mortgages and denying that the notes were secured by mortgages. Plaintiff's amended complaint sought reformation of the promissory notes, alleging that because of a mutual mistake, the loan documents did not reflect the parties' intent to have the mortgages signed by First National secure the notes signed by the Maleniuses, and requested the court to order the Maleniuses to direct First National to sign the notes. Thereafter, the Maleniuses filed an adversary complaint in the bankruptcy court because of a disagreement as to the terms of their agreed order entered into on September 19, 1985. An unsigned copy of the court's order dated May 8, 1986, which defense counsel stipulated was an order entered in the bankruptcy proceedings, found that the Maleniuses had "for more than four years acknowledged the mortgage indebtedness of both the first and second mortgages affecting the premises described in the Agreed Order entered herein on September 19, 1985 *** and have admitted the validity of said mortgages in the said Agreed Order dated September 19, 1985," and estopped the Maleniuses from asserting that the debts in question were not secured debts for purposes of the bankruptcy proceedings.

At trial, plaintiff called Edwin A. Malenius as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). He testified that he was authorized to sign letters of direction to First National; that he consulted with his father, O. Edwin Malenius, to determine whether a particular document should be signed; and that he prepared and executed letters directing First National to sign the four mortgages in this case. Respecting the July 1979 loan, the following colloquy occurred between plaintiff's counsel and Edwin A. Malenius:

"A. Yes, but I knew it was happening.

Q. You knew what was happening?

A. I knew that—I knew that we were never—were never going to be in a position where we could get promissory notes for our *** work, and I knew that what was attempting to be done was to put a mortgage on the property.

Q. And you were willing to do that in order to get the money?

A. I already had the money.

Q. And you were willing to put a mortgage on the property to continue your relationship with the lender?

A. Yes.

Q. And that's the case in all of these; isn't it?

A. That's correct."

Malenius also testified that when he received the July 1979 mortgage for First National to sign he did not object to plaintiff but had the mortgage signed, although he was not happy about it. When he received the October and November 1979 mortgages he contacted plaintiff and "was advised that there would be no more—within a short period of time, there would be no more promissory notes signed. I was advised *** that their new procedure would be that all notes would be executed by the trustee."

Timothy Emerson, vice-president of Marengo, testified to the bank procedures followed for secured loans, and that the procedures followed for the Maleniuses' loans were consistent with the bank's procedures. He also testified that Federal law requires the bank to have a borrower sign a right of rescission form if the transaction will result in a lien being placed on real estate; that the bank only uses a right of rescission form in connection with secured loans; and that the Maleniuses executed a right of rescission form in connection with each loan.

The trial court, after a bench trial, entered a judgment reforming the notes to conform to the mortgages and stated in a memorandum

opinion that the evidence clearly showed that, as of July 1979, the parties intended the promissory notes to be secured by second mortgages, but because of a mutual mistake the written documents did not reflect their intention.

Defendants first contend that there was no evidence that the Maleniuses intended, at the time they executed the promissory notes, to secure the notes by valid second mortgages. Plaintiff contends that the parties intended that the mortgages secure the notes but because of a mutual mistake the documents did not embody that intention.

A party seeking reformation of a contract must show that the written instruments to be reformed do not reflect the parties' intended bargain because of the parties' mutual mistake or a unilateral mistake by one party caused by the fraud of the other party. (*West Chicago State Bank v. Rogers* (1987), 162 Ill. App. 3d 838, 850, 515 N.E.2d 1261.) Here, no allegations of fraud are involved, but rather, whether the facts show that because of a mutual mistake the promissory notes do not reflect the parties' intentions to secure them by mortgages. A mutual mistake

> "results in the drawing of the contract itself. It is not a fundamental mistake relating to an essential element of the contract, which would prevent a meeting of the minds of the parties; rather, it occurs when an actual good-faith agreement is reached but, due to error, is not expressed in the written reduction of the agreement. [Citation.] Thus, the mistake must have existed at the time of the execution of the instrument, must have been mutual and common to all parties, and must have been such that the parties intended to say one thing but by the written instrument expressed another. [Citation.] A mutual mistake exists when the contract has been written in terms that violate the understanding of both parties. [Citation.] It is well settled that the parol evidence rule is no bar to the admission of evidence on the question of mutual mistake, and this is so even when the instrument to be reformed is clear and unambiguous on its face. [Citation.] Thus parol evidence may be used to show the real agreement between the parties when a mistake has been made and the evidence is for the purpose of making the contract conform to the original intent of the parties. [Citation.]" (*Benyon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 760, 455 N.E.2d 246.)

While reformation should be allowed only where the evidence is clear and convincing (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 427, 487 N.E.2d 758), it is equally clear that a trial

court's finding in a bench trial will not be disturbed unless it is against the manifest weight of the evidence. (*West Chicago State Bank*, 162 Ill. App. 3d at 850.) We conclude that the evidence here overwhelmingly shows that the parties intended, at the time the notes were executed, that the notes be secured by the second mortgages First National executed.

Edwin A. Malenius testified that as of July 1979 he knew that plaintiff would no longer loan him and his father money for their construction work on an unsecured basis and that mortgages would be required. The Maleniuses signed a promissory note dated July 6, 1979, and a mortgage dated July 7, 1979. While First National was the legal title holder of the house and only it could mortgage the property, that the Maleniuses signed the mortgage on July 7, 1979, contradicts their assertion that plaintiff's request for a mortgage was an afterthought of the loan. Edwin A. Malenius testified that, while he was not happy with plaintiff's new requirement that all loans be secured by a mortgage, the mortgages were executed by his direction to First National so that the Maleniuses' banking relationship with plaintiff would continue. On appeal, defendants call this court's attention to the fact that First National did not sign the October and November 1979 mortgages until February 2, 1980, arguing that plaintiff's request for mortgages was not made until some time after the notes were executed. Defendants ignore plaintiff's letters to the Maleniuses admitted at trial dated up to five days after the notes were signed requesting the execution of mortgages.

Furthermore, the Maleniuses' conduct was consistent with their intention to secure the notes. When they sold the property used to secure the July 1979 loan, the installment note for warranty deed expressly acknowledged the second mortgage "dated July 7, 1979." The Maleniuses each filed for bankruptcy protection, listed the loans as secured debts in their statement of financial affairs to the bankruptcy court, and entered into an agreed order in those proceedings acknowledging the validity of the loans as secured debts. We conclude that the Maleniuses intended to secure the notes in this case with second mortgages on the related property. Because plaintiff does not argue that the Maleniuses are bound in this court by the agreed order entered into on September 19, 1985, in the bankruptcy proceedings, we do not consider the issue.

■ Lastly, defendants contend that because plaintiff knew, by virtue of the first mortgages, that First National was the legal title holder of the properties involved in this case, plaintiff's failure to have First National sign the notes was negligent, barring reforma-

tion. We find no merit in this argument. Negligence, standing alone, will not bar reformation because of mutual mistake in that mistake almost always presupposes negligence. (*Blumenfeld v. Neuman* (1953), 350 Ill. App. 306, 312, 112 N.E.2d 742.) Only negligence which is so gross as to amount to a violation of a legal duty will bar reformation (*Korosic v. Pearson* (1941), 377 Ill. 413, 416, 36 N.E.2d 744; *Stoerger v. Ivesdale Co-op Grain Co.* (1973), 15 Ill. App. 3d 313, 317, 304 N.E.2d 300), and defendants have not demonstrated this here.

We affirm.

Affirmed.

DUNN and UNVERZAGT, JJ., concur.