ILANA DIAMOND ROVNER, Circuit Judge.
The State Bank of Arthur (“Arthur”) appeals from .the bankruptcy court’s determination that Citizens National Bank of Decatur (“CNB”)[1] was entitled to first priority to the proceeds from a sale of real property. The bankruptcy court found that CNB holds a valid mortgage on the property that gives it priority over Arthur’s unsecured claim. The district court agreed. However, Arthur asserts priority on the ground that it pursued a fraudulent conveyance action that brought the property into the bankruptcy estate. Arthur acknowledges that this priority status would not supplant existing liens but argues that CNB’s mortgage is invalid. The lower courts disagreed, and we affirm.
I. FACTS

A. The Adversary Proceeding

This case arises from an adversary proceeding related to the Chapter 7 bankruptcy of James DeWitt Bailey and Georganna Bailey (“the Baileys”). On September 19, 1989, the bankruptcy trustee filed a complaint seeking to sell a parcel of real property in Douglas County, Illinois free and clear of any liens, and to determine what taxes might be due on the property. CNB and Arthur, among others, made competing claims to the proceeds from that sale.
Georganna Bailey inherited the Douglas County property in 1984 upon the death of her mother. The Baileys subsequently conveyed legal title to CNB, as trustee under Land Trust No. 3317 (“CNB as land trustee”), but they each retained a fifty percent beneficial interest. On November 1, 1985, the Baileys directed CNB as land trustee to execute a collateral assignment and mortgage on the property to CNB as mortgagee. The mortgage states that it secures an indebtedness of $65,000, which is in the nature of a revolving credit loan and which is evidenced by a note or notes. (Bankr.R. 12, Ex. E.)[2] The mortgage provides that the principal amount “covers not only the current indebtedness of the Mortgagor to the Mortgagee, but also secures advances which may be made from time to time in the future at the option of the Mortgagee, which advances shall be made within one year from the date hereof.” {Id. at 4.) Finally, the mortgage limits the secured indebtedness to $65,000, plus interest. {Id.) CNB’s mortgage was recorded on November 6, 1985.
In conjunction with the mortgage, the Baileys executed a $65,000 promissory note in favor of CNB on November 1. The note indicates that it is secured by a mortgage of the same date taken on real property located in Douglas County, Illinois. The note was signed by the Baileys but not by CNB as the land trustee. (Bankr.R. 14, Ex. B-l.)
On February 8, 1987, the Baileys executed a second promissory note, this one in the amount of $63,000. This note simply renewed the November 1, 1985 note and did not involve any additional funds. Like the 1985 note, the second note is secured by the mortgage and note dated November 1, 1985. It was signed by the Baileys and by James DeWitt Bailey, as President of J.D. Bailey & Associates, but similar to the first note, it was not signed by CNB as land trustee. {Id. at Ex. B-2.)
The Baileys also assigned their entire beneficial interest in the property to their children in two installments dated September 25, 1985 and January 6, 1986,[3] each transferring fifty percent of the interest. CNB received no notice of these assignments until sometime in June 1986.
*239 On March 10, 1987, Arthur filed an action in the Circuit Court of Macon County, Illinois, to set aside the assignments as fraudulent conveyances.' On the following day, the Baileys filed their petition in bankruptcy. Arthur obtained relief from the automatic stay and ultimately succeeded in setting aside the assignments. The state court therefore required the Baileys’ children to transfer title to the bankruptcy trustee so that the property could be sold. This adversary action followed.
Arthur answered the trustee’s complaint by attacking the validity of CNB’s mortgage. Arthur maintained that when the mortgage was executed, the Baileys retained only a one-half beneficial interest in the property because they already had assigned a fifty-percent interest to their children. Consequently, the Baileys could not authorize execution of a mortgage on the entire parcel without their children’s consent. Arthur also argued that it should have priority because it had acquired the property for the bankruptcy estate by initiating the fraudulent conveyance proceeding. Arthur’s answer prompted CNB to file a motion for determination of lien priorities. In response to that motion, Arthur reasserted the arguments in its answer and maintained that CNB’s mortgage was invalid for the additional reason that it failed to specifically describe the notes or indebtedness secured. Arthur further observed that neither of the two promissory notes had been signed by the land trustee as mortgagor, although the mortgage so required.
The bankruptcy court conducted a hearing on CNB’s motion on December 12, 1990, and at that hearing CNB suggested for the first time that the mortgage ought to be reformed to cure Arthur’s technical objections.[4] Moreover, the bankruptcy court permitted CNB, over Arthur’s general objection, to submit the affidavits of two bank officers as well as that of James Bailey to establish: (1) that CNB and the Baileys had intended the mortgage to secure the notes, and (2) that the Baileys had not notified CNB when they assigned their beneficial- interests to their children.

B. The Lower Court Decisions

The bankruptcy court determined that CNB’s claim had priority over Arthur’s unsecured claim. The court concludéd that the mortgage was valid even though it failed to specifically describe the notes secured. Because both notes expressly stated that they were secured by the mortgage and because the mortgage was- executed shortly after the original note, the bankruptcy court found that the parties had intended the mortgage to secure the notes. The court also concluded that the Baileys’ earlier transfer of half their beneficial interest in the land trust did not invalidate the mortgage because the land trustee lacked prior notice of the transfer. After finding that CNB had a valid mortgage, the bankruptcy court found that Arthur’s pursuit of the successful fraudulent conveyance action was insufficient to disturb CNB’s priority status.
On appeal to the district court, Arthur raised two challenges: (1) that the bankruptcy court had erred in considering CNB’s reformation theory because that theory had not been raised in any pleading, and (2) that the mortgage did not establish a valid lien on the property: The district court affirmed the bankruptcy court’s decision in a brief order. On the first issue, the court concluded that the. bankruptcy court had properly applied the law of reformation:
The issue of reformation was properly considered by the bankruptcy court in the context of the proceedings which had transpired up to the point of the hearing to determine lien priorities. Furthermore, the affidavits submitted by [CNB] were properly admitted by the bankruptcy court. Bankruptcy Rule 9017.
(R. 10, at 3.) The district court also agreed that the evidence “was consistent with the parties^] intent to secure the promissory notes with a mortgage,” so that the mortgage established a valid lien entitled to first priori-, ty. (Id. at 3-4.) ■ Arthur now appeals that *240 decision, and we have jurisdiction pursuant to 28 U.S.C. § 158(d).
II. DISCUSSION
Arthur’s primary argument on appeal is that CNB’s mortgage does not create a valid lien on the Douglas County property. Arthur acknowledges that its institution of the fraudulent conveyance action confers priority only over other unsecured claims and not over a valid prior lien. (Arthur Br. at 17-18.) We thus consider the validity of CNB’s lien.
A. CNB’s Mortgage Lien,
Arthur concedes that its primary argument against the validity of the mortgage is a “technical” one. (See id. at 24.) Arthur maintains that because the notes do not conform to the description of the secured indebtedness in the mortgage, they do not establish a valid lien. The mortgage provides security for a revolving credit loan made by the mortgagee to the mortgagor. CNB is the mortgagee in the November 1, 1985 mortgage, and CNB in its capacity as land trustee is the mortgagor. Yet the two notes allegedly secured by the mortgage were not signed by CNB as the land trustee. Instead, the 1985 note was signed only by the Baileys, and the 1987 note was signed by the Baileys and by James Bailey as President of J.D. Bailey & Associates. Arthur argues that the two notes do not conform to the mortgage and that they are therefore not secured.
Arthur relies on Farmers and Mechanics Bank v. Davies, 97 Ill.App.3d 195, 52 Ill.Dec. 655, 422 N.E.2d 864 (1981), which also considered whether certain notes were secured by a mortgage. The mortgage in that case was “given to secure the payment of 13 promissory notes, with their principal amounts totaling $297,254.77, and each marked with the legend ‘This note secured by real estate mortgage dated June 30, 1976.’ ” Id. 52 Ill.Dec. at 656-57, 422 N.E.2d at 865-66. The six notes at issue did not include the required legend, and the Illinois Appellate Court held that it would not look to parol evidence to determine whether, despite the omission, the parties intended the notes to secure the mortgage:
[T]he mortgage, as noted, clearly and unambiguously sets fourth [sic] the intentions of the parties that the mortgage secures 13 notes which bear the legend, ‘This note secured by real estate mortgage dated June 30, 1976.’ The parties thus provided for a clear and unmistakable method for identifying which notes were to be secured by the mortgage.... None of the six notes attached to the complaint and alleged to be secured by the mortgage conform to this explicit description in the mortgage itself.
Id. 52 Ill.Dec. at 658, 422 N.E.2d at 867. The court therefore concluded that the parties did not intend the six notes to secure the mortgage. Id.[5]
Arthur interprets Davies to hold that a court should not consider parol evidence of the parties’ intent unless there is an ambiguity in the mortgage documents, and Arthur urges that there is no such ambiguity here. Yet Davies itself recognizes that “parol evidence has been held admissible to show the intent of the parties with respect to the debt or obligations secured, where there are minor variations between the notes and the debt described in the mortgage.” Id. In Davies, the variation was not minor because the notes lacked “the most distinguishing and identifying characteristic” described in the mortgage. Id. By contrast, the mortgage here does not identify a distinguishing characteristic; it states only that it is security for a note or notes given by the mortgagee to the mortgagor in the .principal sum of $65,-000. The only variation between the actual notes and their description in the mortgage is that they were signed by the Baileys and not by CNB as the land trustee. In all other *241 respects, the notes conform to the mortgage — the 1985 note was in the principal sum of $65,000, the 1987 renewal note was in the sum of $63,000, and both notes recite that they are secured by the November 1, 1985 mortgage. Davies is therefore plainly distinguishable.
In determining whether the mortgage secures the notes, we must consider both the mortgage and the notes in the context of the entire transaction between the Baileys and CNB in its dual capacity as land trustee and mortgagee. Illinois adheres to the general rule that in- construing a mortgage; courts should look to all instruments éxecuted by the contracting parties in the course of the transaction in determining their intent.[6] Peteron Bank v. Langendorf, 136 Ill.App.3d 537, 90 Ill.Dec. 961, 963, 483 N.E.2d 279, 281 (1985); Tepfer v. Deerfield Sav. and Loan Ass’n, 118 Ill.App.3d 77, 73 Ill.Dec. 579, 582-83, 454 N.E.2d 676, 679-80 (1983); see also Republic Steel Corp. v. Pennsylvania Eng’g Corp., 785 F.2d 174, 180 (7th Cir.1986); Lippo v. Mobil Oil Corp., 776 F.2d 706, 713 n. 13 (7th Cir.1985).[7] Thus, in construing the mortgage, we must consider other contemporaneous instruments, including the Baileys’ written directive to CNB as land trustee to execute a collateral assigntnent and mortgage on the property and the Baileys’ promissory notes, both of which purport to be secured by the mortgage.
Marengo Fed. Sav. and Loan Ass’n v. First Nat’l Bank, 172 Ill.App.3d 859, 122 Ill.Dec. 749, 527 N.E.2d 121 (1988), is directly on point. There, the defendants asserted that mortgages were invalid and that certain notes were unsecured because of a critical variance between the notes and the mortgages. As in this case, the notes had been executed by land trust beneficiaries and the-mortgages had been executed .by a bank as land trustee. The plaintiff requested reformation of the notes to reflect the parties’ intention to secure the notes with the mortgages. Id. 122 Ill.Dec. at 750, 527 N.E.2d at 122. The court found the evidence of an intention to secure the notes overwhelming and reformed the notes. Id., at 752, 527 N.E.2d at 124. Among other things, the court pointed out that shortly after each note was issued, the beneficiaries sent a letter to the land trustee directing it to execute a mortgage, and each of the mortgages was in the same amount and had the same repayment period as the related note. Id. at 750, 752, 527 N.E.2d at 122, 124. Moreover, the beneficiaries had expressly acknowledged one of the mortgages when they sold the mortgaged property and had listed the loans as secured debts when they filed their bankruptcy petitions. Id. at 752, 527 N.E.2d at 124. Marengo found this conduct consistent with an intention to secure the notes. Id.
The instruments here also reveal an intention to secure the notes. Both notes state that they are secured by the mortgage, and the 1985 note bears the same date and the same indebtedness — $65,000—as the mortgage.[8] This is not, therefore, a Davies situation that leaves the court-unable to determine whether, the notes in question are the same ones referred to in the mortgage because they lack some distinguishing characteristic. These clearly are the correct notes, with the only glitch being that the *242 notes were executed by the Baileys, who had the 'power of direction over the land trust, rather than by CNB as the land trustee, as called for by the mortgage. This variance is of limited significance when the intention of the parties to secure the notes is apparent from the face of the instruments themselves. Moreover, both James Bailey and a CNB officer have attested that the parties intended the mortgage to secure' the notes. (Bankr.R. 19, at ¶ 8; Bankr.R. 20, at ¶ 7.) We may consider this parol evidence as confirmation of the parties’ intent where,' as here, there is only a minor variation between the mortgage and the notes. See Davies, 52 Ill.Dec. at 658, 422 N.E.2d at 867; Metropolitan Life Ins. Co. v. Kobbeman, 260 Ill.App. 508, 511 (1931).
In Illinois, a mortgage may not be avoided simply “by a mistake in setting forth the name of the parties to the note which is intended to be secured.” Kobbeman, 260 Ill.App. at 512. Rather, “[wjhen a note and the mortgage given to secure it mutually refer to each, other, they must be construed together.” Id.; see also Marengo, 122 Ill.Dec. at 752, 527 N.E.2d at 124; Provident Fed. Sav. and Loan Ass’n v. Realty Centre, Ltd., 101 Ill.App.3d 277, 56 Ill.Dec. 851, 854, 428 N.E.2d 170, 173 (1981), aff'd, 97 Ill.2d 187, 73 Ill.Dec. 389, 454 N.E.2d 249 (1983); Miller v. Swanson, 66 Ill.App.2d 179, 213 N.E.2d 294, 300 (1965) (variance between trust deed and notes as to the identity of the payee and the place of payment do not defeat the intention of the parties to secure the notes). Construing the notes and the mortgage together with reference to the entire transaction between the parties convinces us that the parties intended the notes to be secured by the November 1, 1985 mortgage..
Arthur contends, however, that even if the instruments clearly evidence an intention to secure the notes, we should not allow reformation because it would adversely affect intervening rights acquired by Arthur through its pursuit of the fraudulent convey-anee action. We agree that reformation should not be permitted when it adversely affects the rights of an intervening third party or a purchaser for value without notice. See, e.g., Gatton v. Page, 44 Ill.App.3d 559, 3 Ill.Dec. 287, 289, 358 N.E.2d 685, 687 (1976). But even if that principle were to apply to rights obtained by virtue of a fraudulent conveyance action, which we need not decide today, it would not assist Arthur here because Arthur had notice of CNB’s lien. See Skach v. Gee, 137 Ill.App.3d 216, 91 Ill.Dec. 882, 884, 484 N.E.2d 441, 443 (1985) (third-party purchaser could not avoid earlier mortgages when it had notice of the principal amount, interest rate, and term of the indebtedness, even where new notes had been substituted for those specifically described in the mortgages). When Arthur- filed the fraudulent conveyance action, it knew that the land trust owned the Douglas County property and that CNB held a $65,000 mortgage.[9] Arthur nonetheless challenged the fraudulent conveyances. Arthur was therefore .not an innocent third party without notice of CNB’s lien. Instead, it relies on a subsequently-discovered technical variance to avoid the impact of that lien. That variance did not prejudice Arthur, and it therefore will not defeat the intention of the parties to secure the notes.
We agree with the lower courts that CNB holds a valid prior lien by virtue of the November 1, 1985 mortgage and that its claim is entitled to priority over that of Arthur, in spite of the fact that Arthur instituted and litigated the successful fraudulent conveyance action.

B. Procedural Issues

Arthur also raises two procedural objections to the bankruptcy court’s decision. First, Arthur maintains that the reformation issue was not properly before the court because CNB did not file a proper pleading requesting that relief. Arthur also argues *243 that the bankruptcy court erred by accepting the affidavits CNB tendered at the December 12, 1990 hearing and in relying on these affidavits as evidence of the parties’ intent. We find no abuse of discretion on either score.

1. Reformation

Arthur contends that the bankruptcy court should not have reformed the notes because prior to the December 12 hearing CNB failed to file any pleading or make any written or oral request for that relief. Thus, Arthur contends that it was without notice that CNB would seek reformation before that time. Like Arthur’s argument on the merits, we find this contention to be overly technical.
In considering the absence of an affirmative pleading requesting reformation, it is important to recall the posture in which this issue came before the bankruptcy court. The adversary proceeding was initiated by the bankruptcy trustee, not by CNB. CNB and Arthur answered the trustee’s complaint, each claiming priority to the proceeds from the sale of the Douglas County property— CNB on the basis of its mortgage, and Arthur by virtue of litigating the fraudulent conveyance action. Arthur acknowledged in its answer that its claim was subject to valid prior liens, but it attacked the validity of CNB’s lien on the ground that the Baileys retained only a one-half interest in the property when they directed the land trustee to execute the mortgage. Even in its answer, Arthur failed to raise the variance issue on which it now primarily relies, and CNB therefore had no occasion to request reformation. It was only in response to CNB’s motion to determine lien priorities that Arthur raised the question of a variance. CNB orally responded to Arthur’s argument at the December 12, 1990 hearing and at that time cited the factually analogous Marengo decision.[10] Given the chronology of the parties’ evolving positions, CNB did not forfeit its right to seek reformation by failing to move for this relief in advance of the hearing. The bankruptcy court did not abuse its discretion in entertaining the request for reformation.

2. Affidavits

. We similarly find that the bankruptcy court did not abuse its discretion in accepting the affidavits tendered by CNB at the December 12 hearing. Arthur argues that these affidavits, which provided the only evidence supporting CNB’s reformation theory, should not have been received at the hearing because there was no opportunity for Arthur to respond. Yet Arthur made only a general objection to the affidavits and did not request time to respond. Moreover, the affidavits were not critical to CNB’s theory, as they merely support the mortgage instruments themselves. As discussed above, the parties’ intention to secure the notes is evident from the face of the documents. The bankruptcy court relied on those documents, rather than the affidavits, in deciding this case. (See Bankr.R. 23, at 4.) The bankruptcy court did not abuse its discretion in accepting the affidavits.
III. CONCLUSION
For the foregoing reasons, CNB holds a valid lien and therefore has priority to the proceeds from the sale of the Douglas County property.
AFFIRMED.

. Citizens is now known as the First of America Bank-Decatur, N.A.

. The record on appeal from the bankruptcy court to the district court is the first document in the record on appeal to this court. References to the bankruptcy record will take the form "Bankr. R.,” whereas other references will be cited simply as "R.”

.Thus, the first assignment predated execution of the mortgage and the first promissory note, whereas the later assignment postdated execution of those instruments.

. This hearing was not transcribed, and we therefore have no record to assist our review. Instead, two of the attorneys present at the hearing have submitted affidavits describing what occurred.

. Although the court determined that the notes did not conform to the specific mortgage provision described above, it remanded the case for consideration of a "dragnet clause” that more broadly described the secured indebtedness. The court determined that the existence of the specific and general provisions, "each independently stating the debts for which the security is given,” could create an ambiguity as to what debts were covered by the mortgage. Id. 52 Ill.Dec. at 659, 422 N.E.2d at 868. It therefore directed the trial court to consider evidence “on the issue of the parties' intentions as to what indebtedness was to be secured by the mortgage.” Id.

. The parties agree that Illinois law governs our construction of the mortgage and notes.

. Arthur attempts to distinguish these cases on the ground that they involve disputes between parties to the agreement rather than a dispute with a third party. Yet, we fail to see how that would affect our analysis of the parties’ intent in these circumstances. In addition, Arthur's reliance on Ogden v. Ogden, 180 Ill. 543, 54 N.E. 750 (1899), is misplaced, because there, the note was made six years after the mortgage that allegedly secured it, and the rights of a third party had attached during the intervening period. Id. at 751. Here, the 1985 note was executed at the same time as the mortgage so that Arthur is not prejudiced by our consideration of all the relevant documents.

.The 1987 renewal note is for $63,000, which is consistent with the statement in the mortgage that "[t]he total amount of indebtedness that is to be secured may increase or decrease from time to time, but the total unpaid balance so secured" at any one time shall not exceed the $65,000.00 principal amount....” (Bankr.R. 12, Ex. E.) Arthur also argues that the 1987 note could not be secured because the mortgage applies only to advances "made within one year from” the date of its execution. (Id.) But it is undisputed that the 1987 note was a renewal note and that it did not involve the advance of additional funds.

. Arthur argues that notice of the recorded mortgage is insufficient because “[t]he public records .do not inform the Arthur Bank or any other creditor of the existence of the debt Citizens claims to be secured.” (Arthur Reply at 10.) But the recorded mortgage informs Arthur that the Bailey’s indebtedness is evidenced by a note or notes not to exceed the principal sum of $65,000, plus interest as specified in the notes. That adequately informs Arthur of the existence of the debt. See Skach, 91 Ill.Dec. at 884, 484 N.E.2d at 443.

. The bankruptcy court expressly relied on Mar-engo in deciding to reform the promissory notes. (Bankr.R. 23, at 3-4.)