## CHARLES A. CRANE *et al.*

*v.*

## ANNA S. CHANDLER *et al.*

*Opinion filed June 19, 1901.*

1. MORTGAGES—*mortgage cannot exist if there is no debt to be secured.* In determining whether a transaction is a sale or a mortgage, one of the first inquiries of a court of equity is whether an indebtedness existed between the parties at the time of the transaction, since no mortgage can exist without an indebtedness to be secured.

2. SAME—*when transaction is a sale and not a mortgage.* A transaction whereby the owner of encumbered lots transfers his equity therein by quit-claim deeds, the grantee executing an agreement "to sell" the lots to the grantor at a specified advance price within one year, will be treated as a sale and not a mortgage, where the grantee paid cash for the property, taking no security to protect her against loss on foreclosure, and where no indebtedness existed between the parties when the deed was made.

3. SAME—*what will not convert transaction into a mortgage.* The fact that the agreement for the re-sale of lots to the grantor provides that he shall pay the encumbrances upon the property does not show that his deed, absolute in form, was intended as a mortgage, where the encumbrances were existing liens upon the property when the deeds were made and the grantee did not assume or agree to pay them.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an appeal by the defendants from a decree entered by the superior court of Cook county in favor of the complainants, setting aside two deeds made by Albert Crane, in his lifetime, to Charles A. Crane and recorded in the recorder's office of Cook county; an affidavit of Henry J. Goodrich stating that said deeds were in the nature of a mortgage, which was also recorded in the recorder's office of Cook county; and an inventory filed in the clerk's office of the probate court of Cook county by Patrick H. O'Donnell, administrator of the estate of Albert Crane, deceased, in so far as it inventoried the real

estate described in the bill as the property of Albert Crane, deceased.

Albert Crane was the owner of the real estate in controversy, consisting of one hundred sixty-nine lots located in Chicago. He had negotiated loans thereon through the firm of Chandler & Co., aggregating, approximately, $150,000. Frank R. Chandler, the surviving member of the firm of Chandler & Co. and husband of Anna S. Chandler, is the trustee in all of the trust deeds securing said loans. Said loans were negotiated for and are owned by numerous customers of Chandler & Co. None of them were ever owned by Chandler & Co., Frank R. Chandler or Anna S. Chandler, nor were they, or either of them, liable thereon, as endorsers or otherwise. Albert Crane became involved and was unable to meet the interest on said loans or to pay the taxes on said lots, which had fallen behind for several years. Anna S. Chandler, through her husband, Frank R. Chandler, purchased of Albert Crane his equity in the lots in controversy, and paid him therefor, in cash, $10 per lot. Two quit-claim deeds were executed and delivered by Albert Crane and wife to Anna S. Chandler conveying to her said lots, one of which was dated May 7, 1898, and recorded May 13, 1898, and the other June 4, 1898, and recorded June 13, 1898. The two deeds conveyed all the lots in controversy. Possession was delivered to Anna S. Chandler. Shortly after the execution of these deeds Anna S. Chandler and Albert Crane entered into two agreements in writing, whereby Albert Crane agreed "to purchase" and Anna S. Chandler and her husband "to sell" said premises at the price of $12 per lot, "together with the amount due at the time of such payment under the various trust deeds to the said Frank R. Chandler upon said premises." The first contract was dated May 12, 1898, and was to be performed at any time prior to June 1, 1899, and the second June 11, 1898, and was to be performed at any time before June 11, 1899. The two contracts are identical,

with the exception of the date, the time in which they are to be performed and the property described therein, and are, in part, as follows:

"This memorandum of agreement witnesseth: That Albert Crane hereby agrees to purchase, at the price hereinafter stated, the following described lots, pieces or parcels of real estate situated in the county of Cook and State of Illinois, * * * and Anna S. Chandler and Frank R. Chandler, her husband, agree to sell said premises at said price, and to convey said premises to said purchaser by special warranty deed, but subject to all existing liens and all unpaid taxes, advances and assessments. Said purchaser agrees to pay on or before the .... day of June, A. D. 1899, at the office of Chandler Mortgage Company, provided a good and sufficient special warranty deed or deeds conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid) shall then be ready for delivery, the sum of $12 for each of said lots, together with the amount due at the time of such payment, under the various trust deeds to the said Frank R. Chandler, upon said premises. Said vendors further agree to convey, at any time prior to said .... day of June, A. D. 1899, to said purchaser, by special warranty deed, such part or portion of said premises as is now included in and covered by any of said trust deeds, upon payment of $12 for each lot included in such trust deeds, together with the amount due at the time of such payment under said trust deeds, respectively. Should said purchaser fail to perform this contract promptly on his part at the time and in the manner herein specified, this contract shall, without notice, become and be null and void. Time is of the essence of this contract and of all the conditions hereof."

Albert Crane availed himself of said agreements, in part, and purchased fifteen lots at the consideration stipulated therein. Deeds were made by Anna S. Chandler and her husband to the persons designated by Albert

Crane as purchasers. Albert Crane and Anna Crane, his wife, conveyed said lots by two quit-claim deeds bearing date September 14, 1898, to his son, Charles A. Crane, one of which was filed for record October 28, 1898, and the other October 31, 1899. There was also filed for record an affidavit of one Henry J. Goodrich, stating that said deeds were "in the nature of a mortgage." Albert Crane having died, letters of administration upon his estate were issued to Patrick H. O'Donnell, who filed an inventory, in which, he listed the lots in controversy as part of the estate of Albert Crane, deceased, and by leave of court intervened and as such administrator filed an answer to said bill. Anna S. Chandler having sold certain of said lots to E. Gertrude Johnston, and to Calvin B. Beach and the Northern Trust Company, trustees under the will of E. Kellogg Beach, deceased, intervening petitions were filed by each of said purchasers setting up their rights.

Albert Crane or Charles Crane never availed themselves of the right to purchase any of the lots in controversy under either of said agreements prior to the filing of the bill of complaint herein.

CHENEY & EVANS, and STIRLEN & DICKSON, for appellants.

STILLMAN & MARTYN, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The controlling question in this case is, do the deeds from Albert Crane to Anna S. Chandler, and the agreements between Anna S. Chandler and husband and Albert Crane, referred to in the statement which precedes this opinion, when taken together and considered in the light of the circumstances which attended their execution, constitute an absolute conveyance or a mortgage? The answer depends upon the intention of the parties at the time of the execution and delivery of said deeds and

agreements. The deeds are absolute conveyances. The agreements state that Anna S. Chandler and husband "agree to sell" and Albert Crane "agrees to purchase," and Crane is referred to as "the purchaser." It seems, therefore, clear, upon the face of the papers, the transaction is a sale, and not a mortgage. In *Bearss* v. *Ford*, 108 Ill. 16, on page 23 it is said: "In arriving at the intention of the parties the instrument itself must be first looked to, for, as a general rule, where there is nothing equivocal or ambiguous in the terms of a written instrument it should be given effect according to the plain and obvious import of the language used, unless to do so would lead to unreasonable or absurd consequences."

While upon the face of the papers the transaction appears to be a sale and not a mortgage, the defendants are not precluded thereby from showing that the transaction was in fact intended as a mortgage and not an absolute sale, and for the purpose of determining the intention of the parties the whole subject is open to inquiry, and parol evidence may properly be received to show that said deeds and agreements, though plain, unambiguous and absolute upon their face, are in fact but a security for a loan of money,—a mortgage.

In determining whether a transaction is a sale or a mortgage, one of the first questions into which a court of equity will look is, did an indebtedness exist between the parties at the time the transaction took place?—as no mortgage can exist without an indebtedness to be secured. (*Rue* v. *Dole*, 107 Ill. 275; *Kerting* v. *Hilton*, 152 id. 658; *Jeffery* v. *Robbins*, 167 id. 375; *Burgett* v. *Osborne*, 172 id. 227.) In *Burgett* v. *Osborne, supra*, on page 241 it is said: "Neither when the certificate of sale was assigned to Frank S. Osborne, nor when the master's deed was executed to him, did any indebtedness exist from Heffron to Frank S. Osborne. In *Rue* v. *Dole*, 107 Ill. 275, the question arose whether a transaction was an absolute sale or a mortgage, and we held it to be the former on the ground

that there was no debt, and 'that it is an essential element of a mortgage that some obligation should exist to be secured.' In that case we said (p. 280): 'The deed purports upon its face to convey the premises absolutely, and the contract is a mere re-sale of the premises upon the payment of a certain sum at a specified time. So far, then, as appears from the terms of the deed and contract there is nothing to indicate that the transaction was a mortgage. * * * There is nothing in the circumstances that surround the arrangement that tends to show that the parties intended that the relation of mortgagor and mortgagee should still continue. * * * The land could not be conveyed as security for a debt because there was no debt to secure.' The language thus used in *Rue* v. *Dole, supra*, is precisely applicable to the present case. Again, in *Freer* v. *Lake*, 115 Ill. 662, it was held that 'a debt or obligation of some kind is an essential element in the transaction to create the relation of mortgagor and mortgagee.'—*Kerting* v. *Hilton*, 152 Ill. 658."

In this case, as in the *Rue* and *Burgett cases*, there was no indebtedness existing between the parties at the time the deeds and agreements were executed. Mrs. Chandler had no interest in the trust deeds then on the lots, and was not liable to pay the same, nor did she assume to pay the same, at the time of the purchase. She paid Crane $1690 in cash for his equity in said lots and received from him absolute deeds therefor, and gave to him agreements for the re-purchase of the premises upon the payment of certain sums specified therein. In this transaction we see no evidence that the parties intended that the relation of mortgagor and mortgagee should exist between them, or that the money paid by Mrs. Chandler to Crane was to be considered and treated as a loan. If Mrs. Chandler was making a loan to Crane upon his equity in this property, it is strange that she left the transaction in such a position that there was no mutuality. She had parted with her money, and had nothing

by which she could enforce payment of the balance due her had the property proved insufficient to pay her entire debt on a foreclosure, had the transaction in fact been a mortgage. In the case of *Pitts* v. *Cable,* 44 Ill. 103, such lack of mutuality was deemed conclusive that the transaction was a sale and hot a mortgage. Furthermore, at the time Albert Crane re-purchased the fifteen lots he caused Anna S. Chandler and husband to make deeds directly to the persons to whom he had made sales. If he had understood he was the owner and Anna S. Chandler but a mortgagee he would have conveyed the title to the purchasers himself and caused the mortgage to be released. By thus dealing with the property the parties themselves placed a construction upon the transaction inconsistent with the view that it was a mortgage.

The claim that the equity of Albert Crane in said lots was worth much more than the amount paid him therefor by Mrs. Chandler is hot supported by the evidence. Said lots were heavily encumbered, the interest and the taxes due upon said property were in arrears for a number of years, and Crane was hopelessly insolvent. He was given a year in which to re-purchase the property, but was only able during that time to find purchasers for an inconsiderable portion of the property who would pay an advance over the amount which he had received for his equity, which is strong evidence that there was little margin therein over and above the amount of the encumbrances and the amount paid him for his equity therein. Whether, however, he received more or less than his equity in said lots was worth is not a controlling fact in the case. In *Rue* v. *Dole, supra,* on page 283 we say: "There is a conflict in the evidence as to the value of the property, but whether it was worth more or less than complainants paid we do not regard as a controlling fact in the case. The arrangement under which complainants obtained a deed from the defendant was made after mature deliberation by the defendant. No deception, fraud or oppres-

sion was used, but complainants acted honestly and fairly in the whole transaction, and when property is obtained under such circumstances, although its full value may not be paid, the contract must be sustained."

The fact that the agreements for a re-purchase provided that upon the purchase of any of the said lots Crane should pay the amount of said trust deeds thereon held by Frank R. Chandler does not convert said transaction into a mortgage. Said trust deeds were already liens upon said lots. Anna S. Chandler did not assume to pay the same, and had no interest in the payment thereof except that she, as purchaser, in order to retain the property would be forced to pay the encumbrance thereon, which is true in any case where a party buys land which is encumbered. Crane did not bind himself to pay them by his contract with Anna S. Chandler unless he exercised the right to re-purchase. The object of providing for the payment of said trust deeds was doubtless in the interest of the customers of Chandler & Co., whose good will and confidence Chandler & Co. desired to retain. This, however, did not convert the deeds to Mrs. Chandler into a mortgage to secure the amount of said trust deeds or change the purchase money paid by her to Crane for his equity into a loan. There is nothing in the transaction which indicates that the parties understood a new mortgage was being given by Crane to Mrs. Chandler upon the lots as additional security to secure the payment of the trust deeds running to Frank R. Chandler.

It seems, therefore, clear that the transaction between Albert Crane and Anna S. Chandler was an absolute sale, with the right to re-purchase within one year from the date of the said agreements; that the deeds from Albert Crane to Charles A. Crane amounted only to a transfer to Charles A. Crane of the interest of Albert Crane in said lots which he obtained by virtue of said agreements of re-purchase, and as Albert Crane or Charles Crane failed

to carry out said agreements within the time specified therein in which they were severally to be performed, the same, by their own terms, ceased to have any validity, and Albert Crane had no interest in said premises at the time of his death.

The decree of the superior court of Cook county will therefore be affirmed.                    *Decree affirmed.*