WHIRLPOOL CORPORATION, Plaintiff-Appellee and Cross-Appellant, *v.* BANK OF NAPERVILLE, Defendant-Appellant and Cross-Appellee.

Second District    No. 80-550

Opinion filed June 5, 1981.

140

Ashley S. Rose, of Fawell, James & Brooks, of Naperville, for appellant.

Robert R. Benjamin, of McMahan & Benjamin, Ltd., of Chicago, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

This action was brought by the plaintiff, Whirlpool Corporation (Whirlpool), to recover damages occasioned by the alleged conversion by the defendant, Bank of Naperville (Bank), of certain personal property in which Whirlpool claimed to hold a security interest superior to any claimed by the Bank.

On October 4, 1973, Raymond B. Brooks, d/b/a Carpet Castle (Carpet), then located at Route 30, Joliet Road, Plainfield, Illinois, executed a security agreement with the Bank in exchange for a commitment to receive advances of cash or credit or both. In this security

agreement, the description of collateral to serve as security for the loan did not include inventory, but the description of collateral in financing statements filed in January 1974 with the Secretary of State and with the Du Page County recorder did include inventory. Both financing statements were executed by Raymond B. Brooks, naming the debtor as Carpet Castle with the word "by" adjacent to his written signature and identified the address of the debtor as 1010 North Washington Street, Naperville, Illinois. A store was operated by the debtor at this address in addition to the Plainfield store.

On October 18, 1974, Whirlpool filed a financing statement with the Secretary of State which covered certain collateral made by Whirlpool and sold to Carpet Castle, Inc., located at Route 30, Joliet Road, in Plainfield, Illinois.

On September 2, 1975, Brooks executed and delivered a new note and security agreement to the Bank which included inventory in its description of collateral. The debtor was now described as Carpet Castle, Inc., located at Route 30, Joliet Road, Plainfield, Illinois. No new financing statement was filed.

Predicating its rights on its security interest in the goods in question as security for the loan, the Bank seized them at the Plainfield store of the debtor on February 18, 1977, and sold them pursuant to notice and the receipt of bids because the debtor had defaulted. In a letter to Carpet Castle, Inc., dated February 16, 1977, the Bank stated that its action was based on the debtor's default of the September 2, 1975, agreement, although at trial the Bank contended that it relied on the 1973 security agreement. On April 20, 1977, Whirlpool filed a suit for conversion against the Bank based upon the aforesaid sale.

After a bench trial held November 29-30, 1979, the trial judge entered judgment for the plaintiff, Whirlpool, in the amount of $2,817.26 plus costs, and subsequently the court denied Whirlpool's motion for fees and costs. The defendant appeals the judgment in the plaintiff's favor, and the plaintiff cross-appeals the denial of its motion for fees and costs.

■■■ On appeal, the Bank first contends that Whirlpool did not introduce its security agreement, a necessary element of its cause of action (Ill. Rev. Stat. 1979, ch. 26, pars. 9—203, 9—204; see *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379), at trial. Therefore, the Bank argues, Whirlpool did not prove that it had a security interest in the contested goods, and the Bank's perfected security interest gave it a superior right to possession of the goods as collateral when Carpet defaulted on the loan. However, Whirlpool's complaint clearly alleges the existence of a written security agreement. The Bank did not object at trial to Whirlpool's failure to introduce the document itself into evidence, nor did the Bank offer any testimony or other evidence to contradict the testimony of Joseph

Napolitan, credit manager of Whirlpool, that Brooks signed a written security agreement with Whirlpool. This evidence, while perhaps not the best evidence, was sufficient to support the finding of the court that Whirlpool had a security interest in the property. Whirlpool perfected the security interest by filing.

The Bank's second contention is that its perfected security interest was superior to that of the plaintiff so that its action in seizing the collateral was pursuant to its superior right and, therefore, did not constitute conversion. The Bank insists that the trial court erred in failing to construe the defendant's October 4, 1973, security agreement and the January 18, 1974, financing statement together to constitute the security agreement required by the Uniform Commercial Code (U.C.C.) (Ill. Rev. Stat. 1979, ch. 26, par. 9—203). That security agreement failed to include inventory in the description of collateral, but the financing statement did include inventory.

Although there is some authority for construing multiple documents together to comprise the written security agreement containing a description of the collateral as required by the U.C.C. (see *Yorkville National Bank v. Schaefer* (1979), 71 Ill. App. 3d 137) so that the October 4, 1973, security agreement and subsequently filed financing statement could be construed to include the inventory in question, the critical inquiry in this case is whether the Bank's January 1974 filing remained effective after Carpet terminated operation as a sole proprietorship and began operation as a corporation.

■■ The fact that the Bank required a new agreement from the debtor dated September 2, 1975, and furnished fresh consideration is not dispositive. Merely taking the new note even with an advance of additional cash did not extinguish the old obligation, which was the basis of the Bank's 1973-74 security interest, where, as the debtor testified here, the new note was given in renewal and not in payment. *Community Bank v. Meister Bros.* (1973), 12 Ill. App. 3d 1004, 1008, citing *Continental Illinois National Bank v. Cardwell* (1936), 287 Ill. App. 227.

■■ However, there was uncontroverted evidence that the Bank's January 1974 financing statement actually became seriously misleading when the debtor, Brooks, transferred assets of the sole proprietorship, Carpet Castle, to the successor incorporated entity, Carpet Castle, Inc. (Ill. Rev. Stat. 1979, ch. 26, par. 9—402(7).) The basic purpose of the U.C.C. filing requirements is to put subsequent potential creditors on notice of the security interest claimed by the prior secured party in certain collateral. (*In re Nyack Rug & Furniture Co.* (S.D.N.Y. 1977), 21 U.C.C. Rep. 904, 906; *Borg-Warner Acceptance Corp. v. Wolfe City National Bank* (Tex. Civ. App. 1976), 544 S.W.2d 947; Ill. Ann. Stat., ch. 26, par. 402(7), Official Code Comments, at 285 (Smith-Hurd 1974).) In *In re Little Brick*

*Shirthouse, Inc.* (N.D. Ill. 1972), 347 F. Supp. 827, 829, the Federal court said that "[t]he purpose of the financing statement is to put third parties on notice that a security interest may exist in certain property and that they should contact the parties to obtain details." Whirlpool presented evidence that it did a U.C.C. search at the time it entered into its agreement with Carpet and that the office of the Secretary of State did not report any earlier filings under the name Carpet Castle, Inc.

■■ Section 9—402(7) of the U.C.C. (Ill. Rev. Stat. 1979, ch. 26, par. 9—402(7)) states that, where a debtor changes his name or an organization changes its name, identity or corporate structure so that a filed financing statement becomes seriously misleading, a new filing is required within four months after the change to protect the perfected status of the collateral. If the Bank had promptly filed a revised financing statement under the corporate name Carpet Castle, Inc., Whirlpool would have had notice of the Bank's interest. Since the four-month period had elapsed and the Bank had not filed a revised financing statement when Whirlpool entered its agreement with the debtor, the perfected status of the Bank's interest was no longer effective.

The Bank next maintains on appeal that, even if Whirlpool had a superior interest in the inventory, the plaintiff failed to establish the identity of the goods allegedly converted by the defendant, the plaintiff's right to possession thereof and the value of the goods, so that the judgment for plaintiff in the amount of $2,817.26 was against the manifest weight of the evidence. The claimant must establish identity of the property by a preponderance of the evidence (*Ontario Livestock Com. v. Flynn* (1964), 256 Iowa 116, 126 N.W.2d 362, 367) and ownership and right of possession of identical property allegedly converted (*Satterfield v. Knippel* (Tex. Civ. App. 1943), 169 S.W.2d 795, 796). A mere possibility or suspicion created by the evidence is insufficient to comprise the required showing of specific identity of the goods. (*Anderson, Clayton & Co. v. Rayborn* (Miss. 1939), 192 So. 28.) Citing several portions of testimony and exhibits in the record, the defendant Bank insists that the evidence was insufficient to establish the identity of the goods with sufficient particularity and their delivery and receipt thereof at the Plainfield address where the alleged conversion took place. Alternately, the Bank insists that the value of the goods was not shown by competent evidence and the judgment should be reduced.

■■ The trial judge made his findings of fact regarding these issues and found sufficient evidence. The trier of fact weighs the evidence and draws ultimate conclusions as to the facts, and the reviewing court is not free to set the findings aside just because other inferences and conclusions could have been drawn. (*Bouillon v. Harry Gill Co.* (1973), 15 Ill. App. 3d 45, 50-51.) On the facts of this case, it cannot be said that the trial court's

findings as to identity, right to possession and value of the goods was against the manifest weight of the evidence.

In its counterclaim Whirlpool maintains that the trial court improperly denied its petition for fees and costs and asserts that the Bank violated sections 41 and 57(5) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 41 and 57(5)) and Supreme Court Rule 201(k) (Ill. Rev. Stat. 1979, ch. 110A, par. 201(k)) in that the Bank made untrue statements without reasonable cause, filed an affidavit in bad faith or for purposes of delay and unreasonably failed to facilitate discovery.

■■■ Absent statutory authorization, a litigant is ordinarily not entitled to an award for attorney's fees and expenses; where such authorization exists, the purpose is penal in nature and should be invoked only in cases falling strictly within the terms of the authorization. (*Medical Modalities Associates, Inc. v. Quick* (1978), 65 Ill. App. 3d 300, 304.) Regarding a section 41 violation, the allowance of fees and costs is entirely discretionary (*Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943) and will not be disturbed on review absent clear abuse of discretion (*Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 960). A review of the record and the plaintiff's petition in the instant case does not show that the trial court abused its discretion in denying the petition for fees and costs on section 41 grounds. (*Brainerd v. Flannery* (1978), 56 Ill. App. 3d 991, 996, *cert. denied* (1978), 439 U.S. 983, 58 L. Ed. 2d 654, 99 S. Ct. 573.) As to the alleged Rule 201(k) and section 57(5) violations, it does not appear on this record that the denial of the petition for these alleged violations was an abuse of discretion.

The judgment of the trial court for the plaintiff, Whirlpool Corporation, in the amount of $2,817.26 and the denial of the plaintiff's motion for fees and costs are affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.