In re PAK BUILDERS, an Illinois general partnership, Debtor.

Citizens Savings Bank, an Illinois state chartered savings bank, Plaintiff,

v.

Charles E. Covey, Trustee for Pak Builders, an Illinois general partnership, et al., Defendants.

Bankruptcy No. 00–82412.
Adversary Nos. 00–8145, 00–8151.

United States Bankruptcy Court, C.D. Illinois.

Sept. 17, 2002.

Timothy J. Howard, Peoria, IL, for Plaintiff/Defendant.

Andrew W. Covey, Peoria, IL, for Defendant/Trustee.

Laurie M. Judd, Timothy J Howard, Peoria, IL, Andrew J. Lankton, Eureka, IL, for Defendants.

Gary T Rafool, Peoria, IL, for Debtor.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter is before the Court on two separate but related adversary proceedings consisting of cross motions for summary judgment seeking to determine the validity, extent, and priority of mortgages between the Debtor, Pak Builders, an Illi-

nois General Partnership ("PAK" or "DEBTOR"), comprised of partners David Pugsley ("PUGSLEY") and Martin Kracher ("KRACHER"), and the Defendant, Citizens Savings Bank ("BANK"). Because both adversary proceedings spring from the same facts and request the same relief, this opinion will address both proceedings simultaneously.[1] In both cases, the BANK seeks a judicial determination that the mortgages in question are valid and enforceable liens as a matter of law, and, if necessary, judicial reformation of these liens. Representing the bankruptcy estate, the Trustee, Charles E. Covey ("TRUSTEE"), alternatively seeks to avoid the mortgages pursuant to 28 U.S.C. § 544(a)(3) for failing to give constructive notice to a subsequent bona fide purchaser, for failure to form a valid mortgage contract, for the BANK'S gross negligence in executing the mortgages, and for failure to comply with the minimum mortgage drafting standards of the Illinois Conveyancing Act, 765 ILCS 5/11.

While convoluted and incongruous, the facts of these cases are not in dispute.[2]

On August 3, 2000, PAK filed for Chapter 7 bankruptcy protection. Prior to filing for bankruptcy, PAK acquired multiple real estate parcels ("LOTS") located in Peoria County, Illinois, taking title to each lot as "Pak Builders, an Illinois General Partnership, with Martin Kracher and David Pugsley, sole general partners."[3] Subsequently, PAK granted the BANK one or several mortgages against these properties, the first mortgage often granted on the same day as the conveyancing deed and generally the next recorded document in the Peoria County Recorder's Grantor/Grantee Index. According to the record before this Court, the first mortgage granted to the BANK on each lot identified the mortgagor not as a partnership, but as a corporation, specifically Pak Builders, Inc., with only a few exceptions.[4] In many instances, releases or partial releases of the first mortgages are followed by new mortgages.[5] These subsequent mortgages identify the mortgagor alternately as Pak Builders, Inc.,[6] Pak Builders, Inc. David Pugsley and Martin Kracher,[7] or simply as Pak Builders,[8] instead of as

---

1. The two adversaries, # 00–8145 and # 00–8151, are both before this Court on summary judgment motions originally filed by the BANK, encompassing 21 mortgages on lots designated by number as follows: 79, 130, 131, 133, 135, 140, 144, 146, 148, 149, 152, 160, 174, 179, 183, 187, 188, 189, 191, 193, 194.

2. This opinion should be read in conjunction with case # 00–82412, adversary # 01–8082, also decided this day addressing similar issues.

3. Some conveyancing deeds deviate from this form, identifying the grantee as "Pak Builders, an Illinois General Partnership." Deeds identifying the grantee in this abbreviated manner include Lots 79, 152, 160, 187, 188, 189, and 194. The conveyancing deed for Lot 193 identifies the grantee simply as "Pak Builders."

4. Lots 194 and 191 are the only lots where the first mortgage did not identify the mortgagor as a corporation.

5. There are at least two instances where the same business form is not consistently used to identify the mortgagor in both the mortgage and release. Such inconsistency can be seen in mortgages and releases for Lots 144 and 194 where mortgages and corresponding releases contradictorily identify the mortgagor as a partnership and a corporation within the same chain of title.

6. The mortgages in question identifying PAK as a corporation are found in Lots 79, 130, 131, 135, 140, 144, 146, 152, 160, 174, 179, 183, 188, 193, and 194.

7. The mortgagors were so identified in Lots 187 and 189.

8. The mortgagors were so identified in Lots 133, 148, 149, and 191.

Pak Builders, an Illinois General Partnership,[9] at a time when no corporation named Pak Builders, Inc. existed.[10] These subsequent mortgages are often the ones at issue.

Regardless of the exact business description of PAK, all the aforementioned mortgages are filed under "Pak Builders" in the Grantor/Grantee Index in the Peoria County Recorders Office and are signed by either PUGSLEY or KRACHER with a power of attorney ("POA") indication next to one or the other name. Additionally, some mortgages specifically include a designation of "partner" under the signatures, even when this description conflicts with the identification of the grantor as a corporation.[11] The TRUSTEE has already sold several of the properties in question with Court authorization and awaits direction from the Court as to the proper distribution of these proceeds.

The well-known summary judgment standard applicable in this case states that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Bankruptcy Rule 7056 incorporating Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court must decide whether there is any material dispute of fact requiring a trial, considering all evidence in the light most favorable to the non-moving party. *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148–49 (7th Cir.1994). The moving party bears the burden of proof that no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If this burden is met, the non-moving party must establish by specific allegations that there is a genuine issue of material fact, requiring a trial to resolve these issues. *Id.*

■ Finally, in actions involving real estate, the law of the state where the property is located controls the litigation. *U.S. v. 19.86 Acres of Land in East St. Louis, St. Clair County, Ill.*, 141 F.2d 344, 346 (7th Cir.1944). Because this case involves real estate deeds and mortgages of property exclusively located in Illinois, all real estate questions will be governed by Illinois law. In interpreting Illinois real estate law, this Court is guided by Illinois holdings often over a century old. However, it is a legal axiom that real estate law changes little through the years, and even recent real estate decisions are apt to simply recite antiquated holdings, underlying their consistent and timeless nature. .

The TRUSTEE'S primary argument is that under his § 544(a)(3)[12] power to avoid

---

9. In addition to the numerous variations in the manner PAK is identified and the inconsistent application of these variations, the Court notes that these names are also capitalized in numerous ways. However, variations in capitalization are inconsequential for the purposes of this dispute, and for clarity the Court will adhere to a constant capitalization form, even when the parties have not.

10. On June 16, 1998, the Secretary of State did issue Articles of Incorporation to KRACHER and PUGSLEY for "Pak Builders, Inc." However on January 1, 1999, the corporation's name was changed to Exterior Renova- tion & Repairs, Inc. Because the mortgages in question were all executed after January 1, 1999, no corporation named "Pak Builders, Inc." existed and the grantee was therefore misnamed.

11. This legal impossibility is seen in Lots 130, 144, 152, 179, 187, 188, and 189.

12. 11 U.S.C. § 544(a)(3) provides:

(a)The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid

any mortgage avoidable by a hypothetical bona fide purchaser of real estate, all of the properties at issue can be sold free and clear of the BANK'S liens because one or more of the mortgages granted to the BANK are "wild" instruments not properly granted by the partnership, and therefore not within the direct chain of title.[13] The TRUSTEE claims a reasonable purchaser searching the Grantor/Grantee Index would regard any mortgage granted by a corporation instead of the partnership as outside the chain of title and avoidable for failure to provide notice.[14]

■ For support, the TRUSTEE hinges his argument on *In re Bruder*, 207 B.R. 151 (N.D.Ill.1997), a district court decision stating that, in Illinois, recording outside the chain of title cannot provide a bona fide purchaser with constructive notice of an encumbrance on property, and is therefore avoidable by a trustee under § 544(a)(3). However, this Court is convinced that the convergence of three decisions, *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir.1986), *Bruder*, and *Beaver v. Slanker*, 94 Ill. 175 (1879), instruct that in certain limited circumstances a doc-ument recorded outside of the direct chain of title can provide a bona fide purchaser with constructive notice of an encumbrance upon property based upon an inquiry notice theory; a holding in direct contravention of *Bruder*.

■ Interpreting the language of § 544(a)(3), the Seventh Circuit held that "actual knowledge of the encumbrance will never prohibit a trustee from invoking § 544(a)(3)." *Sandy Ridge Oil Co., Inc.*, 807 F.2d at 1335. However, the Seventh Circuit emphasized that the state law of constructive notice remained applicable in the context of § 544(a)(3).[15] *Id.* at 1336. Thus, under § 544(a)(3), the TRUSTEE can avoid any lien of which he does not have constructive notice under state law.

■ Under Illinois law, recording through the Grantor/Grantee Index is the sole instrument through which the controlling issue of constructive notice can be charged. See *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill.App.3d 512, 527 N.E.2d 1033, 1034, 123 Ill.Dec. 395 (3 Dist.1988); *Krueger v. Oberto*, 309 Ill.App.3d 358, 724 N.E.2d 21, 29, 243 Ill. Dec. 712 (2 Dist.1999). Further, under

any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

13. A "wild" instrument is a legal term of art defined on page 6–7 of this opinion in the Court's treatment of *In re Bruder*, 207 B.R. 151 (N.D.Ill.1997).

14. The TRUSTEE cites numerous cases to support his contention that the use of "Inc." is of such major significance as to completely prevent any mortgages so executed from pro-viding constructive notice. However, all of the TRUSTEE'S cases are UCC cases and therefore do not control issues involving real estate which are controlled by state law. The UCC cases the TRUSTEE incorrectly relies upon include *Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786 (7th Cir.1981); *Whirlpool Corp. v. Bank of Naperville*, 97 Ill.App.3d 139, 421 N.E.2d 1078, 52 Ill.Dec. 215 (2 Dist.1981); *In re McCauley's Reprographics, Inc.*, 638 F.2d 117 (9th Cir.1981). This issue was given more thorough treatment in the concurrently filed companion opinion to this adversary proceeding.

15. *Sandy Ridge* dealt with the issue of constructive notice under Indiana mortgage law, and because this issue was unclear under applicable Indiana law, the Seventh Circuit certified the issue to the Indiana Supreme Court. 807 F.2d at 1338.

Illinois law, a purchaser is automatically charged with constructive notice of any document operating to give notice that is recorded in the direct chain of title in the Grantor/Grantee Index. *In re Richardson*, 75 B.R. 601, 605 (Bankr.C.D.Ill.1987); *Skidmore*, 123 Ill.Dec. 395, 527 N.E.2d at 1034. For virtually all of the mortgages at issue, at some point there was a technical break in the chain of title when the property deeded to the DEBTOR was subsequently mortgaged by a nonexistent corporate form of Pak Builders to the BANK in absence of a recorded document linking the corporation and the partnership. Therefore, under established Illinois mortgage law, these mortgages are technically outside the direct chain of title, despite being recorded in the Grantor/Grantee Index, and fail to automatically provide notice to a bona fide purchaser.

With this in mind, the Court turns to the decision in *Bruder*. The district court in *Bruder* addressed a highly similar situation where the bank argued that a bona fide purchaser would have notice of the bank's recorded liens, even if these liens were recorded outside the direct chain of title. In *Bruder*, a mortgage was granted to First National Bank & Trust Co. which, after the mortgage was recorded, subsequently changed its name to Bank One. Without mentioning its previous existence as First National Bank & Trust Co., Bank One assigned its interest in the mortgage to Bank One Mortgage. The *Bruder* Court held the assignment to Bank One Mortgage was outside the chain of title because there was no record reflecting the connection between First National and its successor, Bank One. As a result, the *Bruder* Court determined the assignment was a wild instrument and failed to automatically provide a third party purchaser with constructive notice.

The *Bruder* Court stated that in Illinois, a wild instrument is "[a]n instrument which is recorded, but which cannot be traced back to the original grant because some previous instrument connecting it to the chain of title is unrecorded." 207 B.R. at 157. As a result, such an instrument "lies outside the chain of title and is said to be a 'wild' or 'stray' instrument." *Id.* The *Bruder* Court correctly interpreted this aspect of Illinois mortgage law, determining that a bona fide purchaser would not automatically be put on constructive notice of a wild instrument recorded outside the direct chain of title.

■ However, in *Bruder*, as in the case at bar, the bank also relied upon the doctrine of inquiry notice to prove the trustee possessed constructive notice of the liens. In Illinois mortgage law, inquiry notice charges a person with knowledge of facts that might have been discovered through diligent inquiry. *See, e.g., Miller v. Bullington*, 381 Ill. 238, 243, 44 N.E.2d 850, 852 (1942); *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.*, 117 Ill.App.3d 636, 645, 453 N.E.2d 806, 813, 72 Ill.Dec. 931, 938 (2 Dist.1983). Noting that a finding of inquiry notice was a question of fact the bankruptcy court failed to make in the original proceedings, the *Bruder* Court nonetheless held:

> The only possible way ... [anyone] ... could be put on inquiry notice, therefore, is if there are matters of record which would put them on inquiry notice—that is, only those matters of which they are held to be on constructive notice can be used to determine whether they were put on inquiry notice. ·

207 B.R. at 159.

The *Bruder* Court went on to hold that "inquiry notice is an impossibility in this case as a matter of law" because "a wild instrument, cannot operate (based merely on constructive notice) to put any of these

parties on inquiry notice because they are not deemed to have knowledge of it. Without knowledge of the [lien], there is no conceivable way a party would be put on inquiry notice." 207 B.R. at 159. In a footnote, the court attempted a clarification of its holding, stating "to be clear, this court is not presented with the situation of a party having *actual* knowledge of the wild instrument. Nevertheless, it is doubtful that a wild instrument could put a party on inquiry notice."[16] 207 B.R. at 159, n. 7 (emphasis in original).

This Court must disagree with this portion of the district court's decision in *Bruder* because the *Bruder* Court failed to account for early Illinois decisions such as *Beaver*, 94 Ill. at *6, and *Leeser v. Kibort*, 243 Ill.App. 258, *2 (1927), that held inquiry notice could lead to constructive notice under Illinois mortgage law, even when the instruments in question were recorded outside the direct chain of title. While both of these decisions are over 75 years old, they remain good law. Further, the doctrine of inquiry notice as applied to Illinois mortgages continues to be upheld by state courts. *See, Miller*, 381 Ill. at 243, 44 N.E.2d at 852; *Pacemaker Food Stores*, 117 Ill.App.3d at 645, 453 N.E.2d at 813, 72 Ill.Dec. at 938.

Over 100 years ago the Illinois Supreme Court held in *Beaver*, that mistakes "palpable" on the face of the mortgage give notice to third party purchasers of the possibility of defects in a mortgage instrument, even if this instrument is technically outside the chain of title. 94 Ill. at *6. In *Beaver*, the parties had transposed the names of the mortgagee and mortgagor in mortgage documents, and the plaintiff

urged that while the mistake could be corrected as between the two parties to the deed, an innocent bona fide purchaser of the property could not be charged with notice of the mortgage and should therefore take the land unaffected by the mortgage. Noting all other aspects of the deed were correct and uncontested, the Illinois Supreme Court rejected this argument, reforming the mortgage and holding that the plaintiff had notice of the mistake from the recording of the mortgage, emphasizing that the mistake was "palpable" because the parties signed and acknowledged the deed correctly. *Id.* The rule expressed in *Beaver* was later upheld by the *Leeser* Court, despite that court's finding that the doctrine of inquiry notice did not apply to the facts in its case:

> If there is an error apparent on the face of the instrument and of such a character as to lead a purchaser of ordinary prudence to make inquiry, and such inquiry would have led him to knowledge of the true condition of the title, he will be held to such knowledge.

243 Ill.App. at *2.

The *Bruder* Court erred by overlooking Illinois decisions such as *Beaver* and *Leeser* and eliminating the possibility of applying an inquiry notice standard to the mortgages in that case. The Seventh Circuit mandates that valid state mortgage law regarding constructive notice be applied when a TRUSTEE exercises his § 544(a)(3) powers. *Sandy Ridge Oil Co., Inc.*, 807 F.2d at 1336. In Illinois, in light of *Beaver*, it is possible for inquiry notice to lead to constructive notice, conflicting with the *Bruder* Court's determination

---

**16.** As this Court reads this footnote, the *Bruder* Court was only expressing doubt whether actual knowledge of a wild instrument could put a party on constructive notice, having previously decided inquiry notice cannot beget constructive notice. Of course, the Sev-

enth Circuit had already decided this issue in *Sandy Ridge*, holding that a trustee's actual knowledge in the context of a § 544(a)(3) bankruptcy proceeding is irrelevant. 807 F.2d at 1335.

that inquiry notice *first* requires constructive notice. Logically, the *Bruder* Court's reasoning is flawed because requiring constructive notice as a prelude to inquiry notice conceptually removes the entire possibility of documents recorded outside the direct chain of title of providing notice, a result in direct conflict with the decisions in *Beaver* and *Leeser*.

When viewed together, the *Sandy Ridge*, *Bruder*, and *Beaver* decisions create a rule in Illinois that to provide constructive notice to a bona fide purchaser an encumbrance recorded in the Grantor/Grantee Index must *generally* be within the direct chain of title *unless* there are errors palpable on the face of the document requiring a diligent purchaser to inquire further. 807 F.2d at 1336; 207 B.R. at 156–57; 94 Ill. at *6. When irregularities are apparent with an instrument recorded in the Grantor/Grantee Index, but outside the direct chain of title, a diligent purchaser must examine the document to determine if a connection appears between the wild instrument and the other instruments within the direct chain of title.[17] Any other result would strip the rulings in *Beaver* and *Leeser* of meaning and would be contrary to Illinois mortgage law and Seventh Circuit precedent. With this in mind, the Court turns to the LOTS at issue.

In the present case, all instruments—deeds, mortgages, and releases of mortgage—are listed in the Grantor/Grantee Index under "Pak Builders," the legal name of the DEBTOR, regardless of the type of business entity PAK is identified as in the actual documents. The documents in the chain of title for each lot are rife with inconsistencies palpable on the face of the mortgage, when viewed both internally and within the context of the entire chain of title. Based upon these internal inconsistencies and facial defects, this Court makes a factual finding that while these mortgages are technically wild instruments under Illinois mortgage law, the errors and irregularities would provide inquiry notice, upon which a bona fide purchaser would conclude that Pak Builders the partnership and Pak Builders the corporation were used interchangeably when referring to the DEBTOR.

For example, Lot 191 is clearly encumbered by a mortgage in favor of the BANK granted by "Pak Builders" and signed by PUGSLEY and KRACHER (by PUGSLEY through a POA). Pak Builders is the legal name of the partnership formed by PUGSLEY and KRACHER, and unlike corporations, partners are not required to identify their business as a partnership.[18] Previously, Lot 191 had been conveyed to "Pak Builders, an Illinois General Partnership, with Martin Kracher and David Pugsley, sole general partners," by corporate warranty deed on December 22, 1999. From the record before it, this Court can find neither a technical or actual gap in

---

17. This Court is also aware of Illinois decisions holding that even if recorded, a misdescription of land, standing alone, is insufficient to operate as notice when it is not apparent from the recorded instrument itself that there is a misdescription. *See*, *Slocum v. O'Day*, 174 Ill. 215, 219–220, 51 N.E. 243 (1898); *Grundies v. Reid*, 107 Ill. 304, *5 (1883) (to provide constructive notice, document must either be in the chain of title or "have been made by one in some way connected with the property involved").

18. In Illinois it is statutorily required that to be considered a corporation, the name of a domestic corporation "shall contain, separate and apart from any other word or abbreviation in such name, the word 'corporation,' 'company,' 'incorporated,' or 'limited,' or an abbreviation of one of such words ..." 805 ILCS § 5/4.05(a)(1). No such requirement applies to partnerships.

title nor any other reason to believe a purchaser would not clearly discern an encumbrance in favor of the BANK existed on Lot 191.

Errors on the face of instruments recorded in the Grantor/Grantee Index for other lots also put a diligent purchaser on inquiry notice of the BANK'S liens, leading the purchaser to the conclusion the property was encumbered by mortgages granted to the BANK. As a case in point, both Lots 187 and 189 were conveyed simultaneously on February 7, 2000, to "Pak Builders, an Illinois general Partnership." Recorded on that very same day, the next document pertaining to each lot was a mortgage granted by "Pak Builders, Inc. David Pugsley and Martin Kracher" and signed by KRACHER and PUGSLEY (by KRACHER as POA) over a signature line clearly reading "David Pugsley, Partner" and "Martin Kracher, Partner." The inconsistencies and coincidences are glaring. First, corporations cannot have partners. Second, the same individuals receiving the property as a partnership granted mortgages in their names, *as partners*, the same day even though the mortgagor is identified as a corporation. The facial defects on these instruments would clearly provide notice to a prudent purchaser of a connection between the partnership and the corporation, the legal standard espoused in *Beaver.* 94 Ill. at *6.

The chain of title of Lot 194 also clearly requires a purchaser to take notice of facial inconsistencies that would lead a prudent purchaser to be aware of the BANK'S lien. The conveyancing deed names the grantee as "Pak Builders, an Illinois general Partnership," followed by a mortgage executed the same day naming

the mortgagor "Pak Builders" and signed by KRACHER and PUGSLEY using a POA. The release of this mortgage, however, identifies the mortgagor not as a partnership, but as a corporation, both in the release as well as in the return address. The same day this release was executed a new mortgage naming the mortgagor as a corporation was executed, once again signed by KRACHER and PUGSLEY using a POA. These are exactly the type of irregularities within the chain of title charging a diligent purchaser with the duty to inquire into the discrepancies. Such inquiry would quickly lead to knowledge of the BANK'S liens.

Similar errors are just as clearly present in Lots 79, 152, 160, 174, 179, 183, 188, and 193. The original granting deed for all of these LOTS identified the grantee as a partnership. While Lots 174, 179, and 183 were all conveyed on a different date, all identified the grantee in the conveyance as "Pak Builders, an Illinois general Partnership, with Martin Kracher and David Pugsley, sole general partners." Similarly, the conveyancing deed for Lots 79, 152, 160, and 188 identified the grantee as "Pak Builders, an Illinois general Partnership," while the conveyancing deed to Lot 193 identifies the grantee simply as "Pak Builders."

Again, with the exception of Lot 193, on the same day all of these conveyances were recorded, a mortgage was granted by "Pak Builders, Inc.," and signed by KRACHER or PUGSLEY using a POA in lieu of the other's signature.[19] Additionally, the signature lines for Lots 152, 179, and 188 specifically identified the two men as partners despite identifying the mortgagor as a corporation. Given that these

---

**19.** The mortgage on Lot 193 was recorded a mere six days after the conveyancing deed was recorded, a time frame the Court deems insufficient to require consideration apart

from the other LOTS. The recorded mortgage likewise identified the mortgagor as a corporation.

mortgages were all executed on the same date as the conveyancing deeds, were signed through a POA by the same men taking title as partners in the conveyancing deed, the high degree of similarity between the two names, and, in the case of Lots 152, 179, and 188, specifically identified the signatories as partners, the inconsistencies are glaring to a would-be purchaser and would provide inquiry notice. The diligent inquiry required by such notice would quickly reveal the BANK'S liens, amounting to constructive notice under § 544(a)(3).

The chain of title of all the remaining LOTS in question are similar variations of the foregoing mortgages. The documents appearing within the chain of title for each have errors, palpable on their face, both internally and when viewed within the context of the entire chain of title, sufficient to give notice to a third-party purchaser. The main difference for most of the remaining LOTS is the chain of title includes several mortgages, releases, and partial releases of mortgages, making the chain of title slightly longer and more complex. Nevertheless, similar errors are still present throughout these chains of title providing inquiry, and thus constructive, notice of the BANK'S liens to any potential purchasers.

For instance, the grantee in the conveyancing deed for all of the remaining Lots— 130, 131, 133, 135, 140, 144, 146, 148, and 149—is identified as "Pak Builders, an Illinois general Partnership, with Martin Kracher and David Pugsley, sole general partners." Mirroring most of the other LOTS, the first mortgages on all of these LOTS was granted by "Pak Builders, Inc." and signed by KRACHER and PUGSLEY through a POA on the same date the conveyancing deed was executed. In all LOTS but one, the release of this first mortgage ostensibly releases a corporation while including a return address simply to Pak Builders, the partnership name used by the DEBTOR.[20] The release or partial release of all of these mortgages is followed by the grant of at least one more mortgage.

In some instances, the subsequent mortgage was granted by the partnership and executed by both KRACHER and PUGSLEY through a POA after the original mortgage granted by the corporation was released.[21] Regardless of whether subsequent mortgages are granted by the corporation, the partnership, or a combination, the documents are always signed by KRACHER and PUGSLEY through a POA, and sometimes continue to incomprehensibly identify these men as partners in a corporation.[22] Other LOTS have an extension of a subsequent mortgage and mortgage note granted in favor of the corporation while referring to "Pak Builders David Pugsley and Martin Kracher" in the notary public seal attached to the ex-

**20.** In the chain of title for Lot 146, the first release of mortgage identifies Pak Builders as a corporation both in the release and in the return address. However, in the release of the second mortgage granted to the corporation, the release identifies the corporation while the return address identifies the partnership.

**21.** See the chain of title for Lots 133, 148, 149. The chain of title for Lot 144 includes a release of the first mortgage granted by the

corporation, followed by a mortgage and subsequent release granted by the partnership, followed by a mortgage granted by the corporation; the mortgage currently at issue. Unbelievably, this final mortgage granted by the corporation identifies KRACHER and PUGSLEY as partners on the signature line.

**22.** Lots 130 and 144 are examples of mortgages granted by Pak Builders, Inc. signed by KRACHER and PUGSLEY over a signature line designating them as partners.

tension.[23] Sometimes both the extension and the notary public seal refer to Pak Builders as a partnership.[24]

All of these LOTS contain documents in the chain of title with at least one irregularity that would put a prudent purchaser on inquiry notice.[25] At the very least, the fact that all documents are filed under "Pak Builders" in the Grantor/Grantee Index, the first mortgage granted by the corporation was executed on the same day by the same individuals specifically named in the granting clause of the conveyancing deed and signed with a POA, and the high degree of similarity between the two names sufficiently combine to provide a purchaser with inquiry notice of an irregularity both in the mortgages and the chains of title.[26]

■■■■■ The TRUSTEE next argues that the mistake of a recording clerk in erroneously filing a document in the Grantor/Grantee Index does not make such a document within the direct chain of title. This Court agrees, and, following the same logic, it would be inappropriate to find a recording or scrivener's error standing alone could prevent a recorded instrument from providing constructive notice. As the TRUSTEE himself quotes from *Ward on Title Examinations:*

At this point it is very important to point out that the entire instrument should be read by the title examiner. The indices in the recorder's office simply are designed to alert the title searcher to the existence of various instruments. Those indices cannot advise the title searcher of the exact content of the instrument.... *The title searcher always should be sure that the title examination is made upon the basis of a complete reading of a copy of the instrument.* (Emphasis added).

*Ward on Title Examination,* ILCLE (1986), pp. 10–11. A would-be purchaser would be obligated to read these wild documents more thoroughly after finding them in the Grantor/Grantee Index and being charged with inquiry notice as a result of the inconsistencies and errors on the face of the documents. It is the Court's conclusion that a purchaser would have to affirmatively ignore evidence of multiple irregularities to avoid knowledge of the BANK'S lien, a circumstance amounting to culpable negligence. *Grundies,* 107 Ill. at *4.

Under the facts of this case, the discrepancies are clearly "sufficient to awaken inquiry in the mind of a reasonably cautious man about to purchase," and a dili-

---

**23.** This is seen in the chain of title for Lots 131 and 133.

**24.** This is seen in the chain of title for Lots 140, 148, and 149. However, the extension for Lots 148 and 149 were for a mortgage granted to the partnership, while the extension for Lot 140 identified the grantor as a partnership in the extension and notary public seal while the original mortgage was granted by the corporation.

**25.** The Court notes the only facial irregularity on Lots 135 and 146 is the discrepancy between the return address and the party released in mortgage releases filed in the Grantor/Grantee Index. However, the Court also

considered the fact that all documents pertaining to these lots were filed under "Pak Builders," the first mortgage was executed on the same day by the same individuals specifically named in the granting clause of the conveyancing deed, the high degree of similarity between the two names, and the fact the documents were signed with a POA in reaching the conclusion a subsequent bona fide purchaser would be placed on inquiry notice of the BANK'S liens.

**26.** The Court also relied entirely on these exact factors to find a bona fide purchaser would be placed on inquiry notice of mortgages encumbering Lots 79, 160, and 193 discussed previously.

gent search of the record would undoubtedly provide evidence of the BANK'S liens. *Ogden v. Haven,* 24 Ill. 57, *2 (1860). As is succinctly summed up by the Illinois Supreme Court in *Reed v. Eastin,* 379 Ill. 586, 592, 41 N.E.2d 765, 768 (1942), "whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and *every unusual circumstance is ground of suspicion and demands investigation.*" (Emphasis added).

Having determined that a bona fide purchaser would have constructive notice of the BANK'S liens under Illinois law, negating the TRUSTEE'S § 544(a)(3) avoidance powers, the Court now turns to the TRUSTEE'S contention that even if a bona fide purchaser would have notice of the mortgages, the liens are invalid as a matter of contract law, due to an insufficient meeting of the minds between the contracting parties. This Court addressed this identical issue between these same parties in the companion opinion issued in adversary proceeding # 01–8082. In that opinion, this Court concluded the mortgages were valid as between the BANK and PAK, having met the requirements for a valid mortgage contract. Being highly similar, no facts or circumstances exist in this case persuading this Court to diverge from this holding.

In the aforementioned companion opinion, this Court further concluded the mortgages were reformable to reflect the intention of the contracting parties because the mortgage documents reflected a mutual mistake insofar as they identified the mortgagor as a corporation. In this adversary, the TRUSTEE once again challenges the reformation of the mortgages. Generally, reformation results from a dispute between the parties to the contract over whether or not the written contract reflects the parties' true intent. *Marengo*

*Federal Sav. & Loan Ass'n v. First Nat. Bank of Woodstock,* 172 Ill.App.3d 859, 863, 527 N.E.2d 121, 124, 122 Ill.Dec. 749, 752 (2 Dist.1988).

■ While the validity of the contracts in this case are being challenged by a third party, the Court's conclusion that the contracts entered between the BANK and PAK are valid remains the same. Nonetheless, the mortgages as written in many instances do not reflect the contracting parties intent to have PAK as a partnership named as the mortgagor. Having concluded this was simply a clerical error and reformation would not prejudice third-party bona fide purchasers or judgment creditors, this Court, pursuant to its equitable powers, reforms the contracts to ignore any corporate designation attached to Pak Builders in the execution of the mortgages.

■ Citing UCC cases, the TRUSTEE argues that the BANK'S negligence in the execution of the liens should bar reformation. However, the applicable rule in the context of mortgages is that only negligence which is so great as to amount to a violation of a positive legal duty will bar reformation of a contract when there is a mutual mistake similar to the one the Court finds in this case. *Harden v. Desideri,* 20 Ill.App.3d 590, 597, 315 N.E.2d 235, 241 (1 Dist.1974); *Marengo,* 172 Ill.App.3d at 865, 527 N.E.2d at 125, 122 Ill.Dec. at 753. This Court is unable to find any affirmative legal duty the BANK violated through its negligence that would bar reformation of the mortgages, and the TRUSTEE likewise fails to cite any such duty. As previously held in the companion opinion issued in adversary proceeding # 01–8082, the mistakes in these mortgages were simply clerical errors and entirely reformable as simple negligence. Simple negligence, standing alone, will not bar reformation because of

mutual mistake, in that mistake almost always presupposes negligence. *Blumenfeld v. Neuman,* 350 Ill.App. 306, 312, 112 N.E.2d 742, 745 (4 Dist.1953).

Finally, the TRUSTEE argues that reformation is not possible because the mortgages securing the Line of Credit are invalid since the nature of the secured debt is not correctly identified on each mortgage in violation of the minimum requirements for drafting a mortgage as set forth in the Illinois Conveyancing Act, 765 ILCS 5/11, which provides:

> Mortgages of lands may be substantially in the following form:
>
> The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (herein insert description thereof), situated in the County of _____, in the State of Illinois.
>
> Dated (insert date).
>
> (signature of mortgagor or mortgagors)

Because "no mortgage can exist without an indebtedness to be secured," the TRUSTEE argues that the mortgages are invalid because they fail to accurately describe the nature of the secured debt.[27] *Crane v. Chandler,* 190 Ill. 584, 588, 60 N.E. 826, 828 (1901). The TRUSTEE states that the $160,000 notes referred to in the mortgages as concurrently executed

with the mortgages do not exist, while a $2,000,000 line of credit note payable June 1, 2000, does exist. As a result, the TRUSTEE contends the BANK'S alleged intent to secure either a $160,000 note dated the same day as the mortgage or the entire $2,000,000 line of credit note dated June 1, 1999, is not apparent from the face of the mortgage and extrinsic evidence is of no further help. While not clearly indicating the specific mortgages he refers to, this Court concludes the TRUSTEE is referencing a mortgage dated January 21, 1999, covering 5 LOTS[28] and mortgages granted by "Pak Builders Inc." on various other dates covering the remaining seven LOTS in question.[29] While these mortgages were executed on differing dates, they all have in common an expressed intent to "secure a principal sum of $160,000 ... evidenced by Borrower's note dated the same date as this Security Instrument ... due and payable on June 1, 2000."

■ The TRUSTEE is correct that while a $2,000,000 line of credit dated June 1, 1999, and payable June 1, 2000, exists, no notes in the amount of $160,000 were executed on the corresponding dates of the mortgages. Unfortunately for the TRUSTEE, an error in the date of execution of a corresponding note is irrelevant so long as the required "nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise" is properly described. 765 ILCS 5/11. As stated in *Caraway v. Sly,* 222 Ill. 203, 205, 78 N.E. 588, 589 (1906), the two essential elements of a mortgage are a "debt, legal liability, or

---

**27.** The TRUSTEE only raised this argument in adversary # 00–8151 covering Lots 131, 133, 140, 148, 149, 174, 179, 183, 187, 188, 189, and 191.

**28.** These Lots are # 131, 133, 140, 148, and 149.

**29.** The Lot # and mortgage date are as follows:

    Lot 174; March 22, 2000
    Lot 179; February 25, 2000
    Lot 183; March 15, 2000
    Lots 187 and 189; February 3, 2000
    Lot 188; February 18, 2000
    Lot 191; December 22, 1999

obligation to be secured and a conveyance with an intention to secure that debt or obligation." Because the amount of debt to be secured by note is specifically stated in the mortgage, along with the due date and rate of interest, these two requirements are both clearly met, and the BANK'S mortgage is in full compliance with the minimal requirements of § 5 of the Illinois Conveyances Act, giving appropriate notice to subsequent purchasers of the amount secured.

In conclusion, this Court would add that it is shocked by the sloppy and careless manner in which both the BANK and PAK carried out their business.[30] The record before this Court is a horrendous mix of gaffes and poor management especially concerning in a bankruptcy case involving supposedly sophisticated parties with business dealings involving substantial sums of money. Notwithstanding these observations, this Court, for the reasons previously stated, finds the TRUSTEE is charged with constructive notice of these mortgages.

Therefore, as a result of the foregoing, the Court finds a bona fide purchaser would have constructive notice of the BANK'S liens under Illinois mortgage law. Further, the Court finds the mortgages executed by KRACHER, PUGSLEY, and the BANK are valid as between the DEBTOR and the BANK and reforms the mortgages to reflect the contracting parties' true intent. Finally, the Court concludes the TRUSTEE'S claims of negligence and challenges to compliance with Illinois mortgage law are all insufficient to avoid the BANK'S liens.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

See written Order.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the Summary Judgment Motions filed by CITIZENS SAVINGS BANK to determine the validity and enforceability of mortgages with PAK BUILDERS, AN ILLINOIS GENERAL PARTNERSHIP are hereby GRANTED and the payments in satisfaction of these notes and mortgages are ALLOWED. The corresponding Summary Judgment Motions filed by the TRUSTEE are DENIED in their entirety.

---

**30.** The Court is particularly disturbed by evidence the BANK extended loans secured solely by the LOTS for amounts exceeding the value of the LOTS by approximately 800%, apparently anticipating the construction of a

home on the Lot. In the interim, however, the BANK was woefully undersecured, the financial repercussions of which it is currently experiencing.